## 50221. HUNTON v. COLONIAL PIPELINE COMPANY.

MARSHALL, Judge.

This is an appeal from the dismissal of appellant's complaint in Paulding Superior Court for lack of venue.

Appellant Hunton owns a tract of land in Paulding County and appellee, Colonial Pipeline Company, buried two pipelines through appellant's property. Although appellant contends that appellee has acquired no right to bury the pipelines from appellant, either by condemnation or by purchase, appellant states in his brief: "However, Colonial did acquire a written easement for a pipeline through the tract from the folks who sold the land to Bob, about twelve years ago (R-29). After getting the easement, Colonial put in a pipeline across the property, being the first of the two pipelines on the land of Bob." Appellant was advised by appellee that appellee desired to bury the second pipeline and made appellant an offer of money for the right to do so, which was refused by appellant. On July 29, 1971, appellee tendered to appellant a sum for an additional pipeline, which tender was refused by appellant. Thereafter, appellee proceeded to bury the second petroleum pipeline on the property of appellant. Appellant then brought suit in Paulding County, which was dismissed as a result of a motion to dismiss on the ground that the venue was improper in Paulding Superior Court. There was a stipulation of fact between the parties to the effect that appellant's predecessors-in-title executed a right-of-way easement to appellee on April 28, 1962. The stipulation of fact also included the statement that appellee did tender to appellant $46 in United States currency, which tender was refused by appellant. It was also stipulated that efforts to arrive at a proper amount of construction

damages have not been successful. Further stipulations are, as follows: "1. The complaint alleges and the answer admits that Colonial Pipeline Company was organized under Delaware laws and that its agent for service in Georgia is C. T. Corporation System, 1820 First National Bank Tower, Atlanta, Fulton County, Georgia; 2. Defendant was served in Fulton County by serving C. T. Corporation System; 3. Defendant was not served in Paulding County; 4. Plaintiff does not even allege that defendant has either a place of business or any employees in Paulding County, except that defendant's pipeline traverses the county; 5. Defendant's answer shows that its corporate headquarters and principal place of business are located on the fourteenth floor, Lenox Towers, 3390 Peachtree Rd., N. E., Atlanta, Fulton County, Georgia, and 6. Colonial's Georgia domestication court order fixes its principal place of business in Fulton County."

In his sole enumeration of error, appellant contends that the trial court erred in sustaining the motion of defendant-appellee to dismiss appellant's complaint. He states as the sole issue in the case: whether or not venue of the action is appropriately in Paulding County. *Held:*

1. Appellant contends that the following paragraphs in the instrument labeled "right-of-way easement" (and underneath "option") — "As a part of the consideration hereinabove set forth, grantors hereby grant unto said grantee, its successors and assigns, the right at any time to construct, operate, and maintain an additional pipeline or pipelines substantially parallel to the first pipeline constructed by grantee or grantor's land above-described and grantee agrees to pay grantors the sum of $1.00 per rod for each additional pipeline constructed, said payment to be made before construction commences. Said additional pipeline or pipelines shall be subject to the same rights, privileges, and conditions, as set forth in this instrument.

"This option shall extend for a period of 12 months from the date hereof, during which time grantee may enter upon the premises for making surveys and performing work incidental thereto to locate the route of the initial pipeline to be constructed. Grantee may exercise this option at any time during such period by

paying to grantors the aforesaid further consideration of $1.00 per rod and upon making such payment this option shall become an indefeasible right-of-way easement to be held by grantees, its successors and assigns. If grantee fails to pay said further consideration within said 12-month period, this option shall cease and terminate." — conclusively demonstrates that appellee's right to lay down a second pipeline (upon payment of $1 per rod for the length of the pipeline) terminated at the end of the initial twelve-month period unless "said further consideration" was paid during the period.

A careful reading of the entire instrument results in a contrary result. The first sentence of the instrument sets forth the consideration, as follows: "For and in consideration of Ten and no/100 Dollars, the receipt of which is hereby acknowledged, and the further consideration of One ($1.00) Dollar per lineal rod to be paid within the period hereinafter provided, Mrs. Maggie Quinn and C. C. Quinn, hereinafter referred to as Grantors (whether one or more), do hereby grant and convey unto Colonial Pipeline Company a Delaware corporation, its successors and assigns, hereinafter referred to as Grantee, an easement for a pipeline right-of-way with the right to construct, maintain, inspect, operate, protect, repair, replace, change the size of, and remove a pipeline for the transportation of liquids and/or gases on, over, and through the following described lands of which Grantors warrant they are the owners in fee simple, situated in Paulding County, State of Georgia, to wit: . . ." The sole period mentioned in the entire agreement is the twelve-month option period. We conclude that the sum of $10 was the consideration for the option and that the payment of $1 per lineal rod during the initial twelve-month period converted the option into a right-of-way easement. This is set forth in the following language: "This option shall extend for a period of twelve months from the date hereof, during which time grantee may enter upon the premises for making surveys and performing work incidental thereto to locate the route of the initial pipeline to be constructed. Grantee may exercise this option at any time during such period by paying to grantors the aforesaid further consideration of

$1.00 per rod, and upon making such payment this option shall become an indefeasible right-of-way easement to be held by grantees, its successors and assigns." Both the stipulation of fact and appellant's brief state as a fact that appellee acquired a written easement from appellant's predecessors-in-title. In addition, the stipulation of fact states that pursuant to this easement defendant put a pipeline across the property. These two statements conclusively show that appellee was and is in possession of a valid right-of-way easement across appellant's property. As a part of the right-of-way easement, appellee was given the "right at any time" to construct additional line or lines, upon payment of an additional consideration of $1 per lineal rod. The record contains the stipulation of fact which includes a statement that appellee tendered $46 to appellant, which $46 amounted to $1 per rod, and which tender was refused.

Since appellee reentered the land of appellant under authority contained in a valid right-of-way easement, after compliance with its terms for reentry, no need existed for condemnation under the law of eminent domain to obtain an additional right-of-way, and therefore, the question as to "inverse condemnation" is moot. The trial court properly did not hold that venue was in Paulding County because Georgia law provides for venue of condemnation cases to be in the county where the land lies.

2. We are left with the question as to proper venue for the action for damages to appellant's property resulting from the installation of the second pipeline by appellee. The right-of-way easement provided for actual damages to appellant's property upon construction of an additional pipeline or pipelines. Code Ann. § 22-5301, which is part of the Georgia Business Corporation Code of 1968, is, as follows: "Any corporation chartered by authority of this State may be sued on contracts in that county in which the contract sought to be enforced was made or is to be performed, if it has an office and transacts business there. Suits for damages, because of torts, wrong or injury done, may be brought in the county where the cause of action originated. Service of such suits may be effected by leaving a copy of the writ with the agent of the

defendant, or if there be no agent in the county, then at the agency or place of business."

The stipulation includes a reference to the domestication order of appellee, which fixed its principal place of business in Fulton County, Georgia. In this connection, Section 22-1420, which is a part of the Georgia Business Corporation Act of 1968, provides that a foreign corporation, which prior to the effective date of the Code had been domesticated in this state, would continue to be, in effect, a domestic corporation. Therefore, appellee, being a domesticated foreign corporation, would come under the provisions of the Code section fixing venue for domesticated foreign corporations. In *Stinnett v. Ellis,* 121 Ga. App. 279, this court held: " 'Tort actions may be brought against any corporation chartered by authority of this State in the county where the cause of action originated only if the corporation has in such county an agent, or if there be none, then an agency or place of business. Code Ann. § 22-1102 (Ga. L. 1884-5, p. 99); *Tuggle v. Enterprise Lumber Co.,* 123 Ga. 480 (51 SE 433); *Swift & Co. v. Lawson,* 95 Ga. App. 35, 43 (1, a) (97 SE2d 168), and cases cited.' *Mavity v. First of Ga. Ins. Co.,* 115 Ga. App. 763 (3) (156 SE2d 191). Ga. Ann. Code § 22-1102 was reenacted without change in the Georgia Business Corporation Code as § 22-5301 (Ga. L. 1968, pp. 565, 820)." It should be noted that *Tuggle v. Enterprise Lumber Co.,* supra, gives the rationale for this rule as set forth in the opinion by Justice Fish at page 482.

Even if we were to conclude that appellee was a foreign corporation, rather than a domesticated foreign corporation, the fact that appellee has no agent nor place of business nor agency in Paulding County would prevent venue being placed in Paulding County. The Supreme Court held in *Modern Homes Const. Co. v. Mack,* 218 Ga. 795, 796: " 'A foreign corporation doing business in this State may for purposes of suit be treated as a resident of this State and of any county therein in which it has an agent upon whom service can be perfected.' *Saffold v. Scottish American Mortgage Co., Ltd.,* 98 Ga. 785, 787 (27 SE 208); *Louisville & Nashville R. Co. v. Meredith,* 194 Ga. 106, 108 (21 SE2d 101)." " 'A foreign corporation with agents in this State upon whom service can be perfected

can not be subjected to suit in a county where there is no such agent.' *Gray v. Ga. Loan & Trust Co.,* 166 Ga. 445 (1) (143 SE 501); *A. K. Adams & Co. v. Douglas-Coffee County Hospital Authority,* 209 Ga. 62 (4) (70 SE2d 730); *Liberty Bell Mut. Fire Ins. Co. v. Exum,* 209 Ga. 548 (1) (74 SE2d 738)."

Since the stipulation states that: "4. Plaintiff does not even allege that defendant has either a place of business or any employees in Paulding County, except that defendant's pipeline traverses the county"; and there was no evidence presented to the effect that appellee had either an agent, agency or place of business in Paulding County, we conclude that the trial court properly sustained appellee's motion to dismiss the complaint for lack of venue.

*Judgment affirmed. Bell, C. J., and Webb, J., concur.*

ARGUED FEBRUARY 3, 1975 — DECIDED MAY 13, 1975.

*Fredericks, Jones & Wilbur, Carl Fredericks,* for appellant.

*Peek, Arnold, Whaley & Cate, Ross Arnold, William H. Cate, Charles E. Graham,* for appellee.