A89A0010. BENOIT v. EMORY UNIVERSITY.
(381 SE2d 394)

POPE, Judge.
Plaintiff, Dr. Peter W. Benoit, was an associate professor in the School of Dentistry at Emory University. In 1979, Dr. Benoit was extended tenure at the University and his year-to-year appointment was replaced with an offer of continuous appointment. Pursuant to University rules and regulations, a continuous appointment may be terminated by the University only for specified reasons. One of the grounds for terminating a continuous appointment is "[t]he right of the Board of Trustees under extraordinary circumstances to discontinue any academic program of the University."

In February of 1985 the Board of Trustees voted to discontinue the undergraduate program in the School of Dentistry leading to the D.D.S. degree. The Board decided to phase out the undergraduate program over a period of three years ending in August 1988. Postgraduate programs were to be maintained. During the planning process for phasing out the undergraduate program and restructuring the School of Dentistry, the administration determined that certain faculty members would be terminated while others would be retained to teach in the surviving program. One of the concerns of the admin-

istration was to assure that a sufficient number of faculty members remained over the three-year period to maintain the undergraduate program until it was finally discontinued. On May 10, 1985, the Vice-President for Health Affairs of the University wrote Dr. Benoit of the decision to terminate his appointment as of August 31, 1988. However, the letter also offered Dr. Benoit certain terms of employment in consideration for his agreement to continue with the University during the three-year period. The University promised successive annual five percent salary increases over the three-year period and a one-time bonus equal to his final year's salary upon termination. The letter further informed Dr. Benoit that if he was selected for a position in the continuing program prior to August 31, 1987, the bonus would be waived and a continuing salary would be negotiated. However, he was also informed that a reduction in enrollment could result in termination before August 31, 1988, in which event he would be paid a bonus equal to his final year's salary provided he continued his employment through the date of early termination. The letter requested that Dr. Benoit respond in writing "if you plan to remain." On May 28, 1985, Dr. Benoit responded by letter, stating "I intend to remain at Emory until the end of my appointment under the terms specified in your May 10 letter. . . ."

Prior to his termination, Dr. Benoit filed suit against the University for breach of his contract of continuous appointment alleging, inter alia, that the University's decision to discontinue the undergraduate program did not constitute a contractual basis for the termination of his appointment. The University's motion for summary judgment was granted on the ground that Dr. Benoit's letter of acceptance of the May 10 offer created a new contract and extinguished the terms of the former contract of continuous appointment. Dr. Benoit appeals.

1. The lower court's opinion granting summary judgment is based on the assumption that Dr. Benoit accepted termination of his continuous appointment. However, the offer contained in the May 10 letter did not ask Dr. Benoit to accept the decision to terminate in exchange for the promised salary increases and bonus. In fact, it simply informed Dr. Benoit that the decision to terminate his employment had already been made. Dr. Benoit's reply did not expressly indicate an acceptance of his termination but stated: "I intend to remain until the end of my appointment under the terms specified in your May 10 letter . . . ." It is unclear whether the phrase "under the terms specified in your . . . letter" refers only to his continued employment or also to the phrase "the end of my appointment." Dr. Benoit may have considered "the end of [his] appointment" to be governed by the continuous appointment agreement and not by the University's unilateral decision to terminate. Thus, we cannot find, as a matter of law,

that the two letters standing alone create an agreement to accept termination in exchange for certain benefits.

Under the continuous appointment contract, Dr. Benoit could have resigned at anytime. On its face the May 10 letter to Dr. Benoit offered the stated benefits in consideration for his promise not to resign during the three-year transition period but to remain so the University could depend upon his employment and plan the transition accordingly. Even though the exchange of letters created a new agreement of continued employment, only the particular terms encompassed in the new agreement would be affected and any unchanged terms of the original contract would remain enforceable. See *Shared Medical Resources v. Americus &c. Hosp. Auth.*, 672 FSupp. 509, 514 (M.D. Ga. 1987); *Shalom Farms v. Columbus Bank &c. Co.*, 169 Ga. App. 145 (1) (312 SE2d 138) (1983). Arguably, Dr. Benoit's agreement not to resign during the three-year period did not affect the University's promise of continuous appointment. However, Dr. Benoit's reply did not simply state that he intended to remain for the three-year period in exchange for the promises of certain benefits, but stated he intended "to remain until *the end* of my appointment under the terms specified in your May 10 letter. . . ." (Emphasis supplied.) We agree, as noted above, that the intent of the parties is sufficiently ambiguous from the terms of the two letters to require the court to "look outside the written terms of the contract and consider all the surrounding circumstances to determine the parties' intent. [OCGA § 13-2-2 (1)]." *Southern Fed. Sav. &c. Assn. v. Lyle*, 249 Ga. 284, 287 (290 SE2d 455) (1982).

We disagree, however, that a jury question remains as to the intent of the parties. Construction of an ambiguous contract is a matter for the court and no jury question is raised unless, after application of the pertinent rules of construction, an ambiguity remains. See *Erquitt v. Solomon*, 135 Ga. App. 502 (218 SE2d 172) (1975); *Western Contracting Corp. v. State Hwy. Dept.*, 125 Ga. App. 376, 381 (187 SE2d 690) (1972). Dr. Benoit presented evidence, by affidavit, that he did not intend to waive or relinquish his right to continue his appointment by accepting the terms of the May 10 offer. However, by deposition testimony, Dr. Benoit admitted that before receiving the May 10 offer he had indicated to the administration his intent to leave his teaching position, a decision made, in part, in response to the University's decision to terminate the undergraduate program and in response to certain actions taken by the University in the course of reorganizing the program. Prior to receiving the May 10 offer, Dr. Benoit had requested that the University terminate his appointment and pay him one year's salary as required by the University's rules and regulations regarding termination of tenured professors. That request was refused. Dr. Benoit admitted that in June 1986, he wrote

the Dean of the School of Dentistry and explained that he had accepted the offer of May 10, 1985 "in order to receive the full bonus." Dr. Benoit's deposition testimony indicates he intended to accept termination when he accepted the terms of the May 10 letter. The deposition testimony contradicts the affidavit testimony. However, where contradictory testimony is offered by a party opposing summary judgment, the contradictory testimony is to be construed against him unless a reasonable explanation is offered for the contradiction. *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986). No satisfactory explanation was offered by Dr. Benoit for his deposition testimony which, we find, constitutes an admission that he waived his right to continue his appointment and accepted termination, as well as the stated employment benefits, in exchange for his promise to remain at his position during the phase-out period.

2. We reject Dr. Benoit's argument that no consideration existed to support the creation of a new contract and to extinguish the old. The agreement was made in consideration for a five percent salary increase for each year of the three-year period and for a bonus at termination equal to his final year's salary. Although the University had regularly offered Dr. Benoit annual salary increases, it was under no contractual obligation to do so and the previous salary increases did not create an enforceable obligation of future increases. Therefore, the express promise of future salary increases was new consideration which would support a new agreement. Pursuant to University rules and regulations, the original contract of continuous appointment included an agreement to pay a professor's salary for one year from the date of notification of termination in the event of termination for reasons not involving moral delinquency. In contrast, the May 10 letter promised to pay one year's salary upon termination, even though the date of termination was three and one-half years after the date of notice of termination. Thus, the termination bonus promised in the May 10 letter constituted new and different consideration which would support a new agreement.

3. Dr. Benoit argues that even if a new agreement was formed by the exchange of letters between him and the University, an issue remains for jury determination as to whether the University breached the new agreement by failing to offer him a position in the continuing program. This issue was not raised in his complaint or in the pre-trial order and may not be raised for the first time on appeal. See *Chambers v. Dept. of Transp.*, 172 Ga. App. 197 (2) (322 SE2d 366) (1984).

4. The remaining enumerations of error are addressed in Division 1 of this opinion.

*Judgment affirmed. Banke, P. J., and Sognier, J., concur.*

DECIDED APRIL 3, 1989.

Remar & Graettinger, Robert B. Remar, Susan M. Garrett, for appellant.

Smith, Gambrell & Russell, David A. Handley, William A. Brown, Lokey & Bowden, Gerald F. Handley, Stephen F. Dermer, for appellee.