## A96A0309. CARPET CENTRAL, INC. v. JOHNSON.
### (473 SE2d 569)

POPE, Presiding Judge.

Plaintiff Carpet Central, Inc. d/b/a Associated Furniture Brokers sued defendant Johnson for negligence and breach of contract, alleging that defendant failed to repair numerous leaks in the roof of the building plaintiff had leased from defendant. Following trial of the case before a jury, the trial court granted defendant's motion for a directed verdict. Plaintiff appeals.

In cases like this, we construe the evidence, with all reasonable deductions therefrom, in favor of the party opposing the motion for directed verdict. *Moore v. American Suzuki Motor Corp.*, 203 Ga. App. 189 (1) (416 SE2d 807) (1992). As such, the evidence shows that on April 10, 1990, plaintiff leased a building for use as a used furniture store from defendant. Under the lease, defendant had a duty to make any necessary repairs to the building's roof within a reasonable time after receiving written notice of the need for such repairs. Shortly after plaintiff occupied the premises in June 1990, the roof leaked, damaging plaintiff's office and inventory. Defendant was promptly notified in writing, but no repairs were made for several weeks. Over the next four years, the roof leaked approximately twenty more times, causing additional damage to plaintiff's office and inventory. Each time the roof leaked, defendant was notified in accordance with the lease terms. The record demonstrates that in some instances defendant sent roofers to the building to patch holes or splits and make other incidental repairs. On other occasions, however, no repair attempts were made. It is undisputed that none of the repairs that were made prevented future leaks from occurring. And one of the roofing company's invoices, which was produced by defendant, indicates that the roof was in bad condition. Plaintiff's expert also testified that in his opinion, the roof should have been replaced.

Plaintiff filed its original complaint on August 18, 1993. Therein, it alleged that defendant had breached the lease by failing to meet its repair obligation. Plaintiff also alleged that defendant was negligent

in its attempt to repair the roof, since defendant made only token efforts to repair the leaks when it knew or should have known that the entire roof needed to be replaced. Based on these allegations, plaintiff claimed it was entitled to recover for damages to its office and inventory.

After filing its original complaint, plaintiff decided to terminate the lease early, as provided for in the lease, and go out of business. Thereafter, from February through May 1994, it liquidated its inventory at substantially reduced prices. As a result, plaintiff amended its complaint seeking recovery for lost profits it allegedly incurred as a result of this liquidation. On the day of the trial, plaintiff also sought to amend its complaint to include a claim for diminution in rent, but the trial court refused to allow plaintiff's amendment at that time.

1. Plaintiff contends the trial court erred in determining as a matter of law that plaintiff had failed to demonstrate defendant was guilty of negligent repair. We agree. The common definition of "repair" is very broad in scope and includes in its meaning "to . . . make good." *SunAmerica Financial v. 260 Peachtree St., Inc.*, 202 Ga. App. 790, 792-793 (415 SE2d 677) (1992). As set forth above, defendant was repeatedly notified about leaks in the roof, and in June 1991, plaintiff specifically requested that the roof be fixed permanently because the leaks were continuing to damage plaintiff's office and furniture. Defendant, however, continued to have the roof patched, rather than make the roof good by having it replaced. Although defendant contends that he was never informed that the roof needed to be replaced, there is evidence in the record that one of the roofing companies sent to repair the roof indicated that the roof was in bad condition. Moreover, once a landlord has notice of a defect, such as a leak, he is deemed to have constructive knowledge of all other defects which would have been discovered in repairing the first defect. *Smith v. Smith*, 125 Ga. App. 257 (2) (187 SE2d 330) (1972); *Aycock v. Houser*, 96 Ga. App. 99 (1) (99 SE2d 298) (1957). Consequently, we conclude that there is evidence in the record from which a jury could have determined that defendant's attempts to patch the roof rather than replace it constituted negligence. See *Stern's Gallery of Gifts v. Corporate Property Investors*, 176 Ga. App. 586 (337 SE2d 29) (1985) (negligence found in landlord's repeated failure to make necessary repairs to a roof); *Dempsey v. Hertzfield*, 30 Ga. 866, 869 (1860) (repeated patchwork rather than thorough renovation of a roof to prevent leaks found to be negligent).

2. We reject plaintiff's contention that the trial court erred in granting a directed verdict to defendant to the extent plaintiff sought to recover for damage allegedly caused to its office and inventory. The record shows that after filing its original complaint, plaintiff submit-

ted a claim for recovery of these damages to its insurer. The insurer paid the claim, except for approximately $3,000 worth of deductibles. Although plaintiff admits that under the terms of the lease defendant is not liable for any loss which is covered by tenant's insurance, it claims that it is entitled to recover the amount of its claim treated as a deductible. We disagree. The evidence does not demonstrate that plaintiff could not obtain a policy without a deductible. Absent such evidence, plaintiff has not demonstrated that it fulfilled its obligation under the terms of the lease to maintain fire and casualty insurance coverage *in fully adequate amounts* on its personal property, including trade fixtures, which was placed in or about the leased premises. In this case, the allocation of risk between the parties clearly constituted a matter of contract construction which was properly determined by the trial judge and did not require submission to the jury. See *Lineberger v. Williams*, 195 Ga. App. 186 (393 SE2d 23) (1990); *Benoit v. Emory Univ.*, 191 Ga. App. 211 (1) (381 SE2d 394) (1989). We also note that plaintiff has failed to demonstrate that any alleged damage to its office and inventory occurring after it submitted the abovementioned insurance claim was not covered by insurance. Instead, the record shows that plaintiff has simply chosen not to submit an additional claim.

3. We also reject plaintiff's contention that the trial court improperly directed a verdict as to plaintiff's claim for lost profits. Plaintiff simply has failed to establish a cause and effect relationship between defendant's alleged breach of its duty to repair and plaintiff's decision to go out of business and hold what amounted to a fire sale. There is no indication that plaintiff could not have relocated its business after terminating the lease agreement, or that such a relocation would have been cost prohibitive. Moreover, the burden is on the plaintiff to show both a breach and damage, and this must be done by evidence that will furnish the jury with data sufficient to enable them to estimate the amount of damages with reasonable certainty. The amount cannot be left to mere speculation, conjecture or guesswork. *Turner v. Connor*, 192 Ga. App. 348, 349 (385 SE2d 19) (1989); *Bennett v. Associated Food Stores*, 118 Ga. App. 711, 716 (165 SE2d 581) (1968).

In this case, the formula put forth by plaintiff for computing its alleged lost profits assumes that it would have received full retail price for its inventory, even though plaintiff admitted that sometimes it sold its furniture for less than retail. Additionally, plaintiff failed to demonstrate what the fair market value of its inventory was. In fact, plaintiff readily admitted that it bought its inventory in bulk and had no idea as to the cost of any individual item of inventory. Plaintiff also admitted that the sworn statements it filed regarding its 1994 ad valorem taxes showed that the retail value of

its inventory was $6,196. Plaintiff further admitted that this is the same inventory that it now contends had a fair market value of $128,000, and was liquidated for $54,105.

Plaintiff's testimony concerning the value of its inventory is vague and equivocal at best, and as such, must be construed against it. *Wilson v. Southern R. Co.*, 208 Ga. App. 598, 602 (2) (431 SE2d 383) (1993); *Marett v. Professional Ins. Careers*, 201 Ga. App. 178, 182 (1) (c) (410 SE2d 373) (1991). Accordingly, we conclude that the trial court did not err in determining that plaintiff's claim for lost profits was too speculative to go to a jury.

4. Plaintiff contends that the trial court erred in refusing to allow it to amend its complaint to include a claim for diminution of rent. We agree. It is undisputed that no pretrial order was entered in the case, and plaintiff's motion to amend was made before any evidence was taken at trial. Accordingly, because there is evidence in the record that defendant breached his duty to repair the roof by failing to replace it, and diminution in rent is an appropriate remedy for such a breach, the amendment should have been allowed as a matter of right. See OCGA § 9-11-15 (a); *Jackson v. Paces Ferry Dodge*, 183 Ga. App. 502, 503 (1) (359 SE2d 412) (1987). Thus, we remand the case to the trial court with the instruction that plaintiff be allowed to amend its complaint to assert a claim for diminution in rent.

*Judgment affirmed in part and reversed in part. Smith, J., concurs. Andrews, J., concurs in judgment only.*

DECIDED JUNE 28, 1996.

*Honigman, Miller, Schwartz & Cohn, Charles V. Choyce, Jr.*, for appellant.

*Schwall & Schwall, Emory A. Schwall*, for appellee.