## MARTIN et al. v. SEABOARD AIR-LINE RAILWAY.

1. The description of the land referred to in the deed set forth in the statement of facts was indefinite until the grantee located its road-bed through the lands of the grantor in the town of Lawrenceville. As soon as that was done, the description became definite, and applied to a strip of land of only such width as was then occupied by the railroad-bed and cuts and fills.

(a) The grant did not authorize the successor in title of the grantee, years after the location of the road-bed, to take additional land for the location of a side-track, without consent of the owner or condemnation proceedings.

2. The evidence did not authorize the judge to find that the railroad company had prescriptive title by twenty years adverse possession.

3. The plaintiffs having shown sufficient title to support the action, and there being no evidence of title in defendant, the judgment refusing an interlocutory injunction was erroneous.
APRIL 18, 1913.

Petition for injunction. Before Judge Brand. Gwinnett superior court. November 22, 1912.

On the 23d day of April, 1891, T. M. Peeples executed a deed to the Georgia, Carolina & Northern Railway Company, reciting: "For and in consideration of·one dollar in hand paid, I, T. M. Peeples, hereby sell and convey to the Georgia, Carolina & Northern Railway Company, its successors and assigns, the following property: A strip of land extending each side of and at right angles to the center of the track or road-bed of said line, as the same may be located and established by the party of the second part, upon and over any and all lands of the party of the first part, situated in the county aforesaid [Gwinnett] and in the corporate limits of the town of Lawrenceville, and, in case of high banks or deep cuts, such additional widths as may be necessary. The party of the second part shall have the right to cut timber, move stones,

earth, gravel, and make any other disposition of said land right and proper for railroad purposes, but is to erect no houses on the same. The land hereby conveyed is the ground actually occupied by the road-bed, either fill or cut, and which may be necessary for the operation of the business of said road in running its trains through the lands of the undersigned. It is agreed between the said parties that the party of the second part will put in and maintain at its own expense a stock-gap where the road enters his enclosure on the east side or at the public road." Between 1891 and 1893 the grantee constructed a railroad through the lands of Peeples located in the town of Lawrenceville. Subsequently, in 1912, the Seaboard Air-Line Railway, which had succeeded to the title of the grantee in virtue of the grant from Peeples, undertook to enlarge its actual possession by constructing an additional siding or passing track through the same lands, but parallel to and within 35 feet of the existing main-line tracks. The successors in title to Peeples filed suit to enjoin the construction of the side-track, on the ground that the defendant was seeking to take their property without having purchased or condemned it. In defense to the action the defendant set up title under the deed first mentioned, contending for a construction thereof which would authorize the grantee or its assigns to take additional property for railroad purposes at any time in the future when the necessities of the railroad company might require; and that the power to take the property was not exhausted in the first instance, but could now be exercised. The defendant also set up the defense, that, by prescription on account of adverse use for a period exceeding twenty years, it had the right to the property on which it was sought to construct the side-track. On the interlocutory hearing the judge refused the injunction, and the plaintiffs excepted.

*O. A. Nix,* for plaintiffs.

*Cobb & Erwin* and *N. L. Hutchins,* for defendant.

ATKINSON, J. 1. The land through which the right of way was granted was located in the town of Lawrenceville. The whole tract was not granted, but only a strip of land through the tract. The width of the strip was not specified in feet, or other unit of measurement, but the fact that it was not does not require a construction of the deed that would authorize successive encroachments on the land of the grantor after the railroad company had

selected the location for its road-bed and cuts and fills necessary to the maintenance of the road-bed through such land. So to construe the deed would authorize the grantee to eventually take all of the grantor's land, if the necessities of the railroad company should in future require it. In that event the grantee would get all, and not merely a strip through the land. While the width of the right of way was not expressed in feet, or the like, it was described as "extending each side of and at right angles to the center of the track or road-bed," and, "in case of high banks or deep cuts, such additional width as may be necessary." The clear meaning of this is that the strip of land should be of sufficient width to locate the road-bed of the railroad company; and inasmuch as in some places, on account of the necessity for high banks or deep cuts, a greater width might be necessary than where such would not exist, the right of way so given need not be of uniform width, but, though irregular, should not be wider than actually necessary for the construction and maintenance of the railroad through the grantor's land  That such was the intention of the parties is made the more plainly to appear by the further language of the deed, viz.: "The land hereby conveyed is the ground actually occupied by the road-bed, either fill or cut, and which may be necessary for the operation of the business of the said road in running its trains through the lands of the undersigned." The grant did not identify the land intended to be granted, but left it to the grantee to complete the identification by locating the road through the grantor's land. This is indicated by the language which refers to the road-bed intended to be located "as the same may be located and established by the party of the second part." Subsequently, when the grantee located its road-bed, that completed the identification of the land granted, and fixed the rights of the parties under the deed, thereby confining the grantee to the land so appropriated. *Gaston* v. *Railway Company,* 120 *Ga.* 516 (48 S. E. 188); *Atlanta & West Point R. Co.* v. *A., B. & A. R. Co.,* 125 *Ga.* 529 (2), 540 (54 S. E. 736). The deed, therefore, was no authority for the successors in title of the grantee, many years after the location of the road-bed, to encroach upon the remaining part of the land from which the strip was taken, for the purpose of building the additional side-track which it was sought to enjoin.

2. It was contended that the defendant had acquired prescriptive title by twenty years adverse possession of that portion of the land on which it was purposed to locate the additional side-track. The action was instituted in October, 1912. The evidence in favor of the railroad company does not disclose clearly the date on which it is contended that the possession commenced on which it relies for prescription, nor even the date of the construction of the railroad through the grantor's land. It was somewhere between the date of the deed, April 23, 1891, and 1893. Even if the railroad company had extended its possession beyond the land actually occupied by the road-bed and cuts and fills since the road was constructed, it is not clear that the adverse possession would have commenced twenty years before the filing of the suit in 1912. But aside from this, the evidence is undisputed that for much of the time during the alleged prescriptive period the successors in title of the grantor were in actual possession, cultivating considerable portions of the land adjoining the road-bed, including the land which the railroad company was seeking to appropriate for the location of the side-track. Under these circumstances the evidence did not authorize the judge to hold that the railroad company had title by prescription.

3. The plaintiffs, who were seeking to enjoin the railroad company from taking their land without condemnation proceedings for the purpose of locating an additional side-track, showed sufficient evidence of title to support their action, while the defendant failed to show title either by grant or prescription. Accordingly, it was erroneous to refuse the injunction.

*Judgment reversed. All the Justices concur.*