26922. GEORGIA POWER COMPANY et al.
v. CITY OF MACON et al.

ARGUED JANUARY 10, 1972—DECIDED FEBRUARY 11, 1972.

*Jones, Cork, Miller & Benton, Wallace Miller, Jr., Troutman, Sanders, Lockerman & Ashmore, James E. Joiner,* for appellants.

GRICE, Justice. This action arose when the appellants Georgia Power Company, an electric utility corporation, and Ed Grubb, its district superintendent, filed a complaint in the Superior Court of Bibb County against the City of Macon and William Branan, Jr., its Director of the Bureau of Inspection and Fees, seeking to enjoin the prosecution of three summonses against each appellant in the City Court of Macon.

Each summons charged the appellants with violation of 13 separate subsections of the City of Macon Electrical Code on 14 occasions, for a total of 66 violations against each appellant, regarding electrical installations installed by them in the city. The maximum punishment for each alleged violation is 60 days in the city stockade or a fine not exceeding $300.

The complaint alleged, in substance, that Georgia Power Company and all its employees are exempt from the City of Macon Electrical Code because the work involved in the summonses was performed pursuant to rights on private property established by easements granted them by the owners of the property involved.

The complaint also alleged that the defendants would continue to make cases against the Georgia Power Company and its employees for similar type work which they will perform from day to day; that they would continue to prosecute the plaintiffs and other employees of Georgia Power Company and subject them to fines and imprisonment as set forth above unless enjoined by the court; that the court should take jurisdiction to prevent a multiplicity of actions; that an actual controversy exists as to whether the ordinances which the plaintiffs are charged with violating apply to Georgia Power Company and Ed Grubb; and that pursuant to *Code Ann.* § 110-1101 et seq. the court should determine once and for all their liabilities, if any, as to the ordinances they are accused of violating and the right of the defendants to issue summonses and subject them to prosecution for such alleged violations.

The prayers were that the court (1) declare the rights, obligations and responsibilities of the parties in the matters complained of; (2) declare that Georgia Power Company and its employees are exempt from the application of the ordinances which they are charged with violating, and that said summonses are null and void; (3) temporarily and permanently enjoin the defendants from prosecuting any of these alleged violations; (4) issue a rule nisi order; and (5) grant general relief.

The defendants answered denying the essential allegations of the complaint.

They conceded that Georgia Power Company had easements and that the work for which charges were made by the aforesaid summonses was done pursuant to these easements, but they denied that Georgia Power Company and its agents, including Grubb, were exempt from the provisions of the City Electrical Code.

Upon the interlocutory hearing the defendants presented no testimony. After hearing evidence, the trial court granted an interlocutory injunction on behalf of the plaintiffs as to two of the summonses, but denied it as to the other four.

In regard to the denial of injunctive relief the order recited in essential part as follows:

"The contention of the plaintiffs that they are exempt from the application, coverage and requirement of the City ordinances of the City of Macon by virtue of the language of Section 90-2 (b) (5) of the National Electrical Code is not well taken. It is the opinion of this court that this language contained in said Code does not purport to exempt petitioners from the operation of the Code but that Section 90-2 (b) is merely a statement by the codifiers reciting certain areas and types of installations which are not provided for in the Code. This court does not determine that this is intended to act as an exemption. The court further determines that even if the said language should be construed as being intended to create an exemption, the matters complained of do not fall within the exemption since in the opinion of the court the mere obtaining of an easement does not place in the complainants the exclusive control of the electric wiring. . ."

As to the four summonses which it refused to enjoin, the trial court's order provided that "although the court finds from the evidence submitted that neither of the plaintiffs installed or had anything whatsoever to do with service-entrance conductors, the plaintiffs can as easily present this evidentiary defense in the Municipal Court of Macon, Geor-

gia, to which the involved summonses are directed, as they can in this court, and thus present here no grounds for the aid of equity."

The appeal is from this order.

■ The appellants contend that the trial court erred in holding that the language of the Electrical Code does not purport to exempt Georgia Power Company's installations from its operation.

In this connection, Section 90-1 (a) of the City Electrical Code, adopted from the National Electrical Code, sets forth its purpose as being "the practical safeguarding of persons and of buildings and their contents from hazards arising from the *use* of electricity for light, heat, power, radio, signalling and for other purposes." (Emphasis supplied.)

Under the caption "Scope," Section 90-2 sets forth in detail those items and installations which are either "covered" (90-2 (a)) or "not covered" (90-2 (b)) by the Code.

Section 90-2 (b) (5), which is the only one of the five specified categories involved here, provides that the Code *does not cover "Installations under the exclusive control of electrical utilities* for the purpose of communication, metering or for the generation, control, transformation, transmission and *distribution* of electrical energy generated in buildings used exclusively by utilities for such purposes or located outdoors on property owned or leased by the utility or on public highways, streets, roads, etc., or *outdoors by established rights on private property."* (Emphasis supplied.)

The word "cover" has many meanings and usages in our language. The definition in Webster's New International Dictionary, 2d Ed., Vol. I, is applicable here, to wit: "To comprehend, include or embrace; as cases covered by a law."

This court has also employed the word "cover" in this same context, such as the following: "The principal question left for decision, therefore, is whether the plaintiffs' trucks are exempted from or *covered* by the Act." *Benton Bros. Drayage &c. Co. v. Mayor &c. of Savannah,* 219 Ga. 172, 175 (132 SE2d 196). (Emphasis supplied.)

In the instant situation it is clear that in the city ordinance involved the word "cover" includes or embraces those items set forth in Section 90-2 (a), and *does not* include or embrace those items and installations recited in Section 90-2 (b) (1, 2, 3, 4, and 5).

For the foregoing reasons we conclude that those installations set out in Section 90-2 (b) (5) are exempt from the city electrical code, and that the trial court erred in its order in this respect.

■ The appellants also urge as error the holding of the trial court that "the mere obtaining of an easement" does not place them in exclusive control of the installations here involved so as to exempt them under the provisions of Section 90-2 (b) (5) of the Code.

In this regard, the complaint did not contend that the obtaining of easements alone placed the Georgia Power Company in the exclusive control of these installations.

Rather, the complaint alleged that these easements established rights outdoors on private property; that pursuant to such easements the installations involved here were constructed on private property; and that the Georgia Power Company owned, maintained, operated and was in exclusive control of the installations and that they were for the distribution of electric energy.

A reading of the easements, all of which are prepared on the same form, discloses beyond doubt that they established rights on private property in the Georgia Power Company. Each one recites that it conveys to the Georgia Power Company, "its successors and assigns, the right, privilege and easement to go in, upon, along and across that tract of land owned by the undersigned . . . together with the right to construct, operate and maintain continuously upon and under said land its lines for transmitting electric current, with poles, wires, transformers, service pedestals, and other necessary apparatus, fixtures and appliances, including the right to stretch communications wires on said poles, or under said lands with necessary appliances; with the right to permit the

attachment of wires and appliances of any other company or person to said poles; together with the right at all times to enter upon said premises for the purpose of inspecting said lines, making repairs, renewals, alterations and extensions thereon, thereunder, thereto or therefrom; together with the right to cut away and keep clear of said overhead or underground lines, transformers, fixtures and appliances, all trees and other obstructions that may now or hereafter in any way interfere or be likely to interfere with the proper operation of said overhead or underground lines, transformers, fixtures and appliances; also the right of ingress and egress over said land to and from said lines."

It was also shown by uncontradicted evidence that all the facilities on the installations involved here were owned, operated and maintained by the Georgia Power Company based on installations pursuant to the above easements. An expert witness gave undisputed testimony that the Georgia Power Company was in exclusive control of its property and facilities located on the involved easements and that these facilities were involved in the distribution of electric current.

Under these facts it follows that the appellants' installations in question here were exempt from the operation of the electrical code because they were installations under its exclusive control for the purpose of distribution of electric energy located outdoors by established rights on private property, as set forth in Section 90-2 (b) (5).

Therefore, the trial court also erred in its ruling as to this feature.

■ The appellants contend that the trial court erred in denying them injunctive relief as to four of the summonses while at the same time enjoining prosecution of the other two. The four remaining summonses simply charged violations of certain Electrical Code sections by virtue of their violating Section 230-41 regulating size (ampacity).

The trial court in its judgment recognized that Section 230-41 of the Electrical Code applies only to service-

entrance conductors and that neither of the appellants "installed or had anything whatsoever to do with service-entrance conductors . . ." It then ruled, however, that any evidence in defense of the alleged violations could "as easily" be presented upon their prosecution in Municipal Court.

Under the facts here the trial court was required to exercise its equity powers with respect to the remaining summonses even if the appellants could as easily present their evidentiary defense in the Municipal Court of Macon as in the Superior Court of Bibb County. They had grounds for equitable relief to prevent a multiplicity of actions.

The appellee Branan testified that he would make additional cases in the future for similar violations of the city electrical code by the appellants unless enjoined by the trial court. The parties stipulated that a conviction of such a violation would subject the appellants to a $300 fine and 60 days in the stockade or city jail.

While the complaint also alleged that Georgia Power Company's property rights were being threatened and that it would thus suffer irreparable damages, this was denied by the defendants in their answer. There was no evidence presented as to this upon the hearing.

However, in our view, once the trial court took equitable jurisdiction and exercised such power in enjoining two of the six summonses complained of, it should have determined all the other issues raised.

This is required by Code § 37-105, which provides: "Equity seeks always to do complete justice; and hence, having the parties before the court rightfully, it will proceed to give full relief to all parties in reference to the subject matter of the suit, provided the court has jurisdiction for that purpose."

This is the rule even though such relief may include legal rights and remedies. *Hall v. English,* 47 Ga. 511 (2); *Kniepkamp v. Richards,* 192 Ga. 509 (16 SE2d 24); *Latham v. Fowler,* 192 Ga. 686, 690 (16 SE2d 591).

It follows that the trial judge also erred as to this portion of his order complained of.

For the foregoing reasons, the action of the trial court in failing to do complete equity by enjoining the appellees from the prosecution of the remaining summonses was an abuse of discretion requiring reversal by this court.

*Judgment reversed. All the Justices concur.*