A99A1350, A99A1351. BIBB COUNTY et al. v. GEORGIA POWER COMPANY (two cases).
(525 SE2d 136)

MILLER, Judge.

When Bibb County condemned neighboring properties to widen a road, it did not condemn any easements Georgia Power may have had for its poles located on the properties. At the first widening in 1967, Georgia Power relocated the poles at its own expense, with many being relocated within the alleged 30-foot-wide easements. At the second widening in 1996, Georgia Power insisted that the county pay for the costs of relocation, resulting in this suit. The court entered summary judgment for Georgia Power to recoup the relocation expenses for 37 of the poles at issue. Because numerous fact dis-

putes on material issues preclude summary judgment, we affirm in part and reverse in part.

## Operative Facts

In the late 1940s and early 1950s, Georgia Power obtained and recorded easements from persons owning property adjacent to an approximately 20-foot-wide road that would later become known as Northside Drive. These indefinite easements allowed Georgia Power to place power poles and distribution lines across the properties, which it did (at least in part). From 1957 to 1965 Bibb County condemned or purchased title to a portion of those same properties, resulting in Bibb County owning fee simple title to an 80-foot right-of-way for the road. Because Bibb County did not condemn the Georgia Power easements, it took the property subject to those easements (to the extent they were valid).[1]

In 1965 Bibb County deeded title to the right-of-way to the Georgia Rural Roads Authority for road construction. In March through August 1967, Georgia Power, at its own expense, relocated its power poles to accommodate the road construction. Nineteen of those poles were moved, most from ten to thirteen feet, south of their former locations. Another 18 not shown on some plats also may have been moved. In 1990 the Georgia Highway Authority (successor to the Georgia Rural Roads Authority) deeded the property back to Bibb County. The City of Macon then annexed small portions of the road.

In 1995 and 1996 Bibb County requested that Georgia Power again relocate its poles (approximately 100) to accommodate another road widening. Georgia Power agreed to move the poles only if the county paid the expense. Bibb County and the City of Macon filed the present declaratory action to force Georgia Power to relocate the poles at its expense and also asserted claims for delay damages, trespass, breach of contract, punitive damages, and attorney fees. Bibb County later added a claim for damages for violating the anti-gratuity clause of the Georgia Constitution.[2] Georgia Power counterclaimed for inverse condemnation. The trial court ordered Georgia Power to relocate the poles and reserved the expense issue for a later determination. On motions for partial summary judgment regarding thirty-seven of the poles, the trial court ruled in two separate orders (one concerning nineteen of the poles — Case No. A99A1350, and the other concerning eighteen — Case No. A99A1351) in favor of Georgia Power. The county and city appeal.

---

[1] See, e.g., *Webster v. Snapping Shoals Elec. Membership Corp.*, 176 Ga. App. 265, 266-267 (1) (a) (335 SE2d 637) (1985).

[2] See Ga. Const. of 1983, Art. III, Sec. VI, Par. VI (a).

1. In arguing summary judgment, the parties focus first on the validity of a 1941 agreement between Bibb County and Georgia Power, in which Georgia Power agreed in part to relocate, at its expense, poles located in a county right-of-way. But this portion of the agreement (regardless of whether the agreement is enforceable) does not apply to the poles at issue and thus is irrelevant. The paragraph on the payment of relocation costs applies only to poles "placed under or prior to this agreement." None of the poles was placed prior to the execution of the agreement, and none was placed under the agreement, which pertains only to poles permissively constructed on county rights-of-way pursuant to an application process established in the agreement. Here Georgia Power placed the original poles at issue pursuant to easements Georgia Power had previously obtained from the private landowners. Even when Georgia Power relocated the poles in 1967 to accommodate road construction, at that time Bibb County had deeded its title to the right-of-way property to the Georgia Rural Roads Authority, and thus the 1941 agreement did not govern the relocation of those poles.

The city's franchise agreement with Georgia Power is also inapplicable. Nowhere in that agreement is the subject of relocation or associated expenses addressed. Thus, both agreements are irrelevant to the 37 poles at issue, and the court did not err in granting Georgia Power summary judgment on the county's and city's claims for breach of these contracts with regard to these poles.

2. Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[3] Applying the de novo standard of review to an appeal from a grant of summary judgment, we must view the evidence, and all reasonable inferences and conclusions drawn from it, in the light most favorable to the nonmoving party.[4]

Various disputed facts preclude summary judgment on Georgia Power's claims for reimbursement for the relocation of the 37 poles. The first dispute is whether Georgia Power had an established easement at the time Bibb County asked it to relocate its poles in 1996. The written easements obtained from the private landowners prior to the 1967 relocation were indefinite easements that became definite by the actual placement of the poles.[5] Once so established, the easements could not be changed without Georgia Power first obtaining from the landowners a further or additional easement, whether by

---

[3] OCGA § 9-11-56 (c).

[4] *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997); *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[5] *Jackson Elec. Membership Corp. v. Echols*, 84 Ga. App. 610, 611 (66 SE2d 770) (1951); see *Gaston v. Gainesville &c. R. Co.*, 120 Ga. 516, 517-518 (1) (48 SE 188) (1904).

condemnation or otherwise.[6] *Jackson Elec. Membership Corp. v. Echols*[7] explained the consequences of a contrary holding:

> To construe the original easement in any other manner would be to authorize the [utility] to eventually take all the [landowners'] land if the necessities of their business dictated, without requiring the payment of any additional damages or compensation to the [landowners] no matter how great the [landowners'] losses might be as a result thereof. This was clearly not the intention of the parties to the instrument. Certainly the [landowners] did not intend to convey to the [utility] blanket authority to take any and all their land whenever it might suit the convenience or necessity of the [utility], without requiring the [utility] to pay such damages as might accrue as a result of such taking.

Once fixed by actual placement of the poles, indefinite easements do not "float" according to the business necessities of the utility.

The disputed facts regarding the establishment of these Georgia Power easements are fourfold.

(a) The evidence is disputed whether prior to the county obtaining the 80-foot right-of-way Georgia Power had indeed placed poles along all of the easements and where exactly those poles (and how many) were placed. Georgia Power did not retain records showing the placement of poles from the early time periods; the earliest documents showing any use are the county's road paving plans for Northside Drive created in 1957 and revised in 1965, which reflect only 15 poles on the south side of the road. To counter Georgia Power's evidence (consisting of extrapolations from those plans and the vague recollections of various individuals about the location of some of the poles), the county submitted (i) the affidavit of an expert who, based on an analysis of aerial photographs of the area from 1960, disputed the placement, number, and maintenance of the poles; (ii) the 1957/1965 plat showing only some of the poles in place and gaps in other places (along with other expert testimony that such gaps would indicate an absence of poles); and (iii) a 1968 plat (accompanied by expert testimony) showing the poles apparently ended before reaching one of the areas in question as they were not shown to continue on property farther west. The weaknesses of the experts' testimonies, as pointed out during their depositions, go to the weight

---

[6] *Jackson Elec.*, supra, 84 Ga. App. at 612; see *Martin v. Seaboard Air-Line R.*, 139 Ga. 807, 809 (1) (77 SE 1060) (1913) (grantee confined to land used in first establishing easement).

[7] Supra, 84 Ga. App. at 612.

of their testimony, which on summary judgment a court must construe in favor of the nonmovants.[8]

(b) The county's expert disputed the width of the easements. Georgia Power claimed the easements were 30 feet wide based on its *historical* practice of maintaining a 15-foot brush/tree clearance around poles located in rural areas like those at issue here.[9] But the county's aerial photograph expert saw no such clearance in the 1960 photographs taken a few years before the county condemned the land (but many years after the poles had been allegedly placed and maintained).

(c) In 1967 (after the county had condemned the property and obtained its right-of-way, but also after the county had deeded the property to the Rural Roads Authority to construct the project), Georgia Power relocated at least some of the poles at issue to the south (many as much as ten to thirteen feet) to accommodate the first widening of the road. Georgia Power contends that since it stayed within the thirty feet it had kept clear of trees and brush (which argument does not even apply to three of the poles that indisputably were located outside the thirty-foot width), it was not changing or abandoning its easement but was simply relocating the poles within the allowed general area of the easement.[10]

But it is a jury question whether the relocating of a power pole several feet to one side was within the "general area" of the easement, since (i) moving a pole thirteen feet to the south would necessarily require, by Georgia Power's own evidence, that the south side of the pole continue to be kept clear by fifteen feet, which would move the entire easement thirteen feet to the south, and (ii) there is a dispute whether the distance of thirty feet was historically kept clear (based on the testimony of the aerial photograph expert, the plats, and the indefinite evidence of Georgia Power). The question is whether the particular movement of the poles was a change in the degree or kind of the easement, for the changed locations may be found to "occupy a general area beyond the outer limits of the space previously occupied. . . ."[11]

Moreover, acquiescing to a relocation of the poles may have constituted an abandonment of the old easements.[12] With regard to the three poles indisputably located outside the thirty-foot width of the "original" easements, the evidence is even more convincingly in the

---

[8] See *HOH Co. v. Ethridge*, 168 Ga. App. 20, 22 (2) (308 SE2d 43) (1983).

[9] Compare *Humphries v. Ga. Power Co.*, 224 Ga. 128, 129 (1) (160 SE2d 351) (1968) (testimony showed power company kept 100 feet clear, which established easement parameters).

[10] Id.

[11] Id.

[12] See *Walker v. Ga. Power Co.*, 177 Ga. App. 493, 496 (1) (339 SE2d 728) (1986).

county's favor.

(d) The entity owning the land at the time Georgia Power relocated its poles in 1967 was the Georgia Rural Roads Authority, not Bibb County. The facts are unclear whether in 1967 the authority followed a State Highway Department policy of allowing pre-existing easements to follow the relocation of poles, when such poles were relocated to accommodate road construction or widening. This written policy, which the Georgia Highway Department did not promulgate or adopt under the procedural requirements of OCGA § 50-13-4 as a rule or regulation, purported to apply to unspecified "Authority projects." But it also claimed to apply only to "On-System" roads, which are undefined and possibly may not apply to the present project (which was never a part of the "State Highway System").

Moreover, when deeding the land to the authority, the county, not the authority, assumed the responsibility for the relocation and removal of all utilities, including power lines. The facts are inconclusive as to the intention of the parties whether the old easements followed the relocated poles, and therefore summary judgment was inappropriate.

3. Georgia Power focuses on the language of the easements as providing the missing certainty. True, the easements from the private landowners were not condemned as part of Bibb County obtaining the title to the right-of-way. Because the easements were pre-existing and recorded, the county took the land subject to the easements.[13] And the written easements do provide that Georgia Power may enter the land to make repairs, renewals, alterations, and extensions on the power lines.

But altering, repairing, and extending the power lines do not encompass the right to move the fixed poles several feet in one direction; otherwise, by incremental adjustments, Georgia Power could eventually take over the entire property, a result not contemplated by such language. The question therefore is whether during 1967 the authority, which was the landowner, and the county, which was in charge of utility relocations, intended that these particular old easements should be moved from their original locations to the new locations.[14] Georgia Power may have also intended to abandon the easements when it relocated the poles in 1967 and did not seek

---

[13] *Duffield v. DeKalb County*, 242 Ga. 432, 436 (4) (249 SE2d 235) (1978); *Hardage v. Lewis*, 199 Ga. App. 632, 633 (405 SE2d 732) (1991); *Webster*, supra, 176 Ga. App. at 266-267 (1) (a). Cf. OCGA §§ 32-3-1 (a); 32-3-3 (a) (allowing counties to acquire property in less than absolute fee simple).

[14] Cf. *Cook v. Wimpey*, 57 Ga. App. 338 (2) (195 SE 325) (1938) (factfinder could find that change in few feet of prescriptive easement did not defeat title to the easement, as the owner's actions necessitated the change, and the change could be found to be insignificant).

reimbursement.[15] Summary judgment was inappropriate.

4. Georgia Power next argues that the county is estopped from denying the existence of the easements. This contention misses the mark for two reasons. First, estoppel alone does not generally apply to the state or county.[16] Nor can prescription run against the state or a local government in regard to land held for the public benefit.[17] Second, "[e]stoppel requires justifiable reliance on the opposing party's representations or conduct and a change in position to one's detriment. [Cit.]"[18] Georgia Power has presented no evidence that it changed its position based on the county's or city's actions.

5. Even assuming the evidence required that we resolve all of the above factual questions in favor of Georgia Power, the determination that Georgia Power's poles were located within its earlier acquired easements and that Georgia Power had not abandoned those easements would not settle the ultimate question of who is responsible to pay for the relocation costs. As pointed out by the amicus brief filed by the Association of County Commissioners of Georgia, OCGA § 32-4-42 (6) authorizes a county to order any utility having poles in, on, along, over, or under the public roads of a county road system to relocate those poles if the relocation is made necessary by the construction of any part of the county road system (outside the corporate limits of a municipality). The statute does not exempt poles that are located in the county right-of-way and also located on pre-existing easements not condemned by the county. The county is to follow OCGA §§ 32-6-171 and 32-6-173, which provide that relocation expenses are to be paid by the utility. Thus, the plain language of this statute appears to answer the issue in the county's favor.

But if pursuant to easements with the previous landowners Georgia Power had located the poles on the land prior to the county taking the land over, these sections would appear to violate the Georgia Constitution provision prohibiting the taking of private property for public purposes without just and adequate compensation first being paid.[19] *Ga. Power Co. v. City of Macon*[20] considered the same language used in the easements here and held "beyond doubt that they established rights on private property in the Georgia Power

---

[15] See generally *Walker*, supra, 177 Ga. App. at 496-497 (1); see also *Sadler v. First Nat. Bank of Baldwin County*, 267 Ga. 122, 123 (2) (475 SE2d 643) (1996); *Gaston*, supra, 120 Ga. at 518 (2).

[16] *Richmond County v. Pierce*, 234 Ga. 274, 278-280 (4) (215 SE2d 665) (1975); see generally OCGA § 45-6-5.

[17] *Grand Lodge &c. v. City of Thomasville*, 226 Ga. 4, 8 (3) (c) (172 SE2d 612) (1970); *Adams v. Richmond County*, 193 Ga. 42, 50 (4) (17 SE2d 184) (1941).

[18] *Allstate Ins. Co. v. Sapp*, 223 Ga. App. 443, 445 (477 SE2d 869) (1996).

[19] See Ga. Const. of 1983, Art. I, Sec. III, Par. I (a).

[20] 228 Ga. 641, 645 (2) (187 SE2d 262) (1972).

Company." An easement is a property right, of which its owner cannot be deprived without just and adequate compensation.[21] Absent the proper exercise of the power of condemnation, the underlying landowner has no power unilaterally to alter the path of an easement, even if the alternate route is "gold-plated."[22] Under similar circumstances, we have rejected the argument that expanding a road is a use of a county's police power.[23] The county cannot substantially impair an easement without paying compensation.[24]

OCGA § 32-6-173 provides for this circumstance in that nothing in the article is to be construed so as to deprive any utility, relocated from a location in which it owned a property interest, of compensation for such property interest. Construed in this context, the statutory scheme provides that the county may require a utility, at the utility's expense, to relocate its equipment, *even if* the county's right-of-way was obtained after the utility had obtained an easement for the equipment. But in turn the utility may seek just and adequate compensation for the loss of the use of its old easement, which loss would include the costs necessary to relocate to the new easement. The fact that the new easement (presumably provided by the county) allows the placement of the poles nearby, only reduces the amount of compensation to be paid the utility. It does not diminish the fact that (i) the loss of the use of the old easement resulted in immediate relocation costs, and (ii) unlike the old easement, the new easement may not allow the recovery of future relocation costs should in the future the utility be required to again relocate its poles.

6. After entry of the two summary judgment orders, the trial court sua sponte amended its second order to add that Georgia Power had a "liberty interest" in the slight movement of its poles and facilities on the right-of-way, which liberty interest was protected by the Fourteenth Amendment. No legal or factual authority supports such a conclusion, and Georgia Power makes no effort to argue otherwise. The court erred in this holding.

7. In one count of its counterclaim, the county claims that Georgia Power's use of the public highways to locate its poles violates the Georgia Constitution's prohibition against gratuities by the state, which has been extended to local governments.[25] The trial court disagreed and entered summary judgment in Georgia Power's favor on

---

[21] *Lee v. City of Atlanta*, 219 Ga. App. 264, 266 (3) (464 SE2d 879) (1995); see *DeKalb County v. Glaze*, 189 Ga. App. 1, 2 (1) (375 SE2d 66) (1988).

[22] *Thomason v. Kern & Co.*, 259 Ga. 119, 120 (376 SE2d 872) (1989).

[23] *Glaze*, supra, 189 Ga. App. at 2 (1).

[24] See id.; *Ga. R. & Banking Co. v. Mayor &c. of Union Point*, 119 Ga. 809, 814-815 (3) (47 SE 183) (1904).

[25] See Ga. Const. of 1983, Art. III, Sec. VI, Par. VI (a); *Grand Lodge*, supra, 226 Ga. at 8 (3) (b).

this claim.

*DeKalb County v. Atlanta Gas Light Co.*[26] held that no constitutional authority allows a county to charge a public utility for the use of a county right-of-way, which undermines a gratuity clause claim.[27] Moreover, because of the benefits afforded to the public, this does not fall within the class of evils prohibited by this provision.[28] The court did not err in granting Georgia Power summary judgment on this claim of Bibb County.

8. The grant of summary judgment in favor of Georgia Power on Bibb County's and the City of Macon's claims for trespass, delay damages, punitive damages, and attorney fees stands as these portions of the orders have not been challenged on appeal. Also not challenged is the court's entry of summary judgment for Georgia Power on the relocation costs of 13 additional poles located outside the boundary of the county's right-of-way, which also stands.

But we reverse the summary judgments granted to Georgia Power on its claims regarding the 19 and 18 poles and affirm the denial of the county's and city's motion for summary judgment on the same. We also affirm the grant of summary judgment to Georgia Power on the breach of contract with regard to the 37 poles and on the illegal gratuity claim of the county.

*Judgments affirmed in part and reversed in part. Pope, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 10, 1999 —
RECONSIDERATIONS DENIED NOVEMBER 30, 1999 — ▮

*Sell & Melton, Joseph W. Popper, Jr., John D. Comer, Robert D. McCullers,* for appellants.

*Jones, Cork & Miller, H. Jerome Strickland, H. J. Strickland, Jr.,* for appellee.

*James F. Grubiak,* amicus curiae.

---

[26] 228 Ga. 512, 514 (5) (186 SE2d 732) (1972).

[27] See also *DeKalb County v. Ga. Power Co.,* 249 Ga. 704, 705 (1) (292 SE2d 709) (1982).

[28] See *State of Ga. v. Trustees of Cincinnati Southern R.,* 248 U. S. 26, 29 (39 SC 14, 63 LE 104) (1918); see generally *Garden Club of Ga. v. Shackelford,* 266 Ga. 24 (1) (463 SE2d 470) (1995); *Smith v. Bd. of Commrs. &c.,* 244 Ga. 133, 140 (2) (259 SE2d 74) (1979).