## S00A0798. HERREN v. PETTENGILL.
### (538 SE2d 735)

FLETCHER, Presiding Justice.

Richard Pettengill brought an action to enjoin Lane Herren from obstructing the roadway that provided the only access from Pettengill's property to a public road. Finding that Pettengill had an express easement over the existing roadway, which he had not abandoned, the trial court granted a permanent injunction. Because the owner of the servient estate cannot substantially alter or relocate an easement without the consent of the owner of the dominant estate, we affirm.

Herren owned a 71 acre tract of land in Union County on which a house was located. In 1998 she conveyed five acres, including the house, to Pettengill. The deed incorporated a plat that specifically identified the five acres, a 40 foot road and utility easement traversing the five acres, and an extension of that 40 foot easement, which is identified as Richard Road, running northerly from the five acres. Although the plat does not depict the entire course of that easement and road, the identified portion of the easement is followed by an arrow and the words "to Crawley Gap Road," which is a Union County public road. The deed makes no express reference to an easement over Herren's remaining land, reciting only that the five acres is "subject to roadway easement shown on the plat."

A few months after the Pettengill conveyance, Herren had her remaining 66 acres surveyed and subdivided. She began construction of a new road that would provide the Pettengill property, as well as the subdivided lots, access to the public road. When she informed him that she intended to close Richard Road but would allow him to use the new road, Pettengill protested, claiming that the new road had a steeper grade and provided less direct access to the public road than the existing Richard Road.

Herren concedes that Pettengill has an implied easement, that existing Richard Road provided his only access to the public road,

and that Herren's remaining property surrounds the Pettengill property, but contends, given the circumstances, equity should allow her to relocate the easement and roadway.

1. Herren asserts that the trial court erroneously construed her deed to Pettengill as conveying an express easement.[1] However, Herren concedes that Pettengill has an implied easement over existing Richard Road[2] and, whether an easement is created by express grant or by implication,[3] once the location becomes fixed, the same rule controls relocation issues, so long as the grant contains no conditions or reservations.[4]

2. The majority rule in the United States is that an easement with a fixed location cannot be substantially changed or relocated without the express or implied consent of the owners of both the servient estate and the dominant estate, absent reservations contained in the instrument creating the easement.[5] Georgia case law addressing the issue of relocation of a fixed easement follows this rule.

In *Thomason v. Kern & Co.*,[6] we held that the owner of the servient estate may not unilaterally alter the location of a prescriptive easement. We have also applied the same rule to easements in streets shown on subdivision plats,[7] which easements are classified as express grants.[8] Additionally, our courts have held that easements for utilities and railroads are confined to their original location, and, in order to alter, expand, or move them, consent or additional easements must be obtained.[9]

Citing foreign cases, Herren urges the adoption of a rule allowing the owner of the servient estate to relocate the easement under limited circumstances when it places no undue hardship on the owner of the dominant estate. This position is similar to the proposal of the drafters of the Restatement (Third) of Property (Servi-

[1] See OCGA § 44-9-1; *Jones v. Mauldin*, 208 Ga. 14 (64 SE2d 452) (1951).

[2] *Burk v. Tyrrell*, 212 Ga. 239 (91 SE2d 744) (1956).

[3] This case presents no issues of abandonment or cessation of necessity.

[4] See William B. Johnson, Annotation, *Locating Easement of Way Created by Necessity*, 34 A.L.R. 4th 769 (1985); Annotation, *Locating Easement of Way of Necessity*, 68 A.L.R. 528 (1930).

[5] See 25 Am. Jur. 2d *Easements & Licenses*, § 79 (1996); 28A C.J.S. *Easements*, § 157 (1996); F.M. English, Annotation, *Relocation of Easements*, 80 A.L.R. 2d 743 (1961); *Davis v. Bruk*, 411 A. 2d 660 (Me. 1980).

[6] 259 Ga. 119 (376 SE2d 872) (1989).

[7] *Northpark Assoc. No. 2 Ltd. v. Homart Development Co.*, 262 Ga. 138 (414 SE2d 214) (1992).

[8] *Smith v. Bruce*, 241 Ga. 133 (244 SE2d 559) (1978); *Walker v. Duncan*, 236 Ga. 331 (223 SE2d 675) (1976).

[9] *Martin v. Seaboard Air-Line R.*, 139 Ga. 807 (77 SE 1060) (1913); *Bibb County v. Georgia Power Co.*, 241 Ga. App. 131, 133-134 (525 SE2d 136) (1999); *Jackson Elec. Membership Corp. v. Echols*, 84 Ga. App. 610 (66 SE2d 770) (1951).

tudes).[10] The restatement proposal closely parallels the civil law rule in Louisiana, which is followed in a few other states.[11]

Although reasonable arguments can be made in support of the drafter's position allowing the owner of the servient tenement to unilaterally make reasonable changes in the location of an easement,[12] we conclude that the majority rule is sounder.[13] Foremost, it provides certainty in land ownership. Allowing unilateral avoidance of the contract by the owner of the servient estate not only would violate fairness principles, it also would create uncertainty in real property law by opening the door for increased litigation over "reasonableness" issues based on today's conditions rather than those considered in the original bargain. No doubt, when the servitude was first created both parties considered all market factors, including their respective costs and benefits, before agreeing on the consideration for the transaction. If the benefits of relocation become substantial enough, it is the market that should ultimately bring the parties together again, not the courts.

Because the majority rule best conforms to principles of real estate law that promote stability, we adhere to precedent and hold that Pettengill's easement cannot be unilaterally relocated.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 13, 2000.

*Robert M. Dyer*, for appellant.
*Claude S. Beck*, for appellee.

---

[10] Restatement (Third) of Property (Servitudes) § 4.8 (Tentative Draft No. 4, 1994).

[11] Id., see comment f.

[12] See id.; Douglas B. Harris, *Balancing the Equities: Is Missouri Adopting a Progressive Rule for Relocation of Easements?*, 61 Mo. L. Rev. 1039 (1996).

[13] See Notes: *The Right Owners of Servient Estates to Relocate Easements Unilaterally*, 109 Harv. L. Rev. 1693 (1996); *R.C.R., Inc. v. Rainbow Canyon, Inc.*, 978 P2d 581, 588 (Wyo. 1999); *Davis*, 411 A. 2d at 665.