**THIRD DIVISION**
**BARNES, P. J.,**
**MCFADDEN, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 17, 2017**

# In the Court of Appeals of Georgia

A16A1537. CLAYTON COUNTY, GEORGIA v. GEORGIA POWER COMPANY.

MCMILLIAN, Judge.

The sole issue presented by this appeal is whether the Georgia Power Company ("Georgia Power") was entitled to compensation from appellant Clayton County, Georgia ("County") for the expenses Georgia Power incurred in relocating electrical lines and supporting structures, which was made necessary by a County road widening project. The trial court found that a 1929 franchise agreement did not apply and ordered compensation for the taking. As more fully set forth below, we now affirm.

The facts are essentially undisputed. In 1947 and 1950, Georgia Power acquired certain easements from private property owners along what are now known as Stagecoach Road and Panola Road in Clayton County ("easement area"), for the purpose of installing and operating electrical distribution lines and supporting structures. The electrical lines were in place and operational by April 1955, and Georgia Power has continuously maintained the lines since that time. Subsequently, in October 1955 and June 1958, the Georgia Rural Roads Authority acquired an 80-foot right-of-way along Stagecoach and Panola Roads, which it in turn deeded the rights to Clayton County. The parties have stipulated that Georgia Power acquired its easements for its electrical poles and lines from private individuals before Clayton County acquired the right-of-way along Panola Road.

In June 2012, the County filed a Petition and Declaration of Taking to condemn certain property as part of the Panola Road Widening Project ("widening project"), including Georgia Power's easement area. Georgia Power filed an answer, a petition to set aside the condemnation as unauthorized, and a notice of appeal challenging the amount stated in the declaration as just and adequate compensation for the condemned property. The County ultimately opposed Georgia Power's claim for compensation, contending that under the terms of a franchise agreement entered into

2

by the parties in 1929, Georgia Power had to bear the cost of removing and relocating the power lines. Georgia Power argued that because the electrical poles, lines, and supporting structures had been placed under the authority of private easements granted by private property owners, the franchise agreement did not apply here, and the County was required to compensate it for loss of use of the preexisting private easements under the authority of *Bibb County v. Ga. Power Co.*, 241 Ga. App. 131 (525 SE2d 136) (1999). The trial court agreed and granted Georgia Power's claim for compensation, which would include the costs necessary to relocate the poles and lines. Following the entry of the final judgment setting the amount of compensation, the County filed this appeal.

We start with an overview of the statutory scheme governing who bears the cost of relocating a utility's structures in connection with a public road improvement project before turning to the terms of the franchise agreement.[1] Generally, expenses

---

[1] As used in this context,

> [a] franchise is a method developed by governments to grant use of public land to private companies for purposes benefitting the general public. Franchises are common law creations dating back to fourteenth-century England, where the sovereign granted private parties use of public property under certain conditions. A franchise allowed a private party to provide a service that was both a public necessity and a natural

incurred for relocating utility poles on or adjacent to public roads are paid for by the utility. See OCGA §§ 32-4-42, 32-6-171 & 32-6-173. However, both OCGA §§ 32-6-171 and 32-6-173 also explicitly provide that "nothing in this article shall be construed so as to deprive any utility, relocated from a location in which it owned a property interest, of compensation for such property interest." Thus, as we explained in *Bibb County*, 241 Ga. App. at 138 (5), while under the above statutes the county may require a utility to relocate its equipment, even if equipment is located on pre-existing private easements, the county cannot substantially impair such an easement without paying compensation and, accordingly, the utility in turn may seek just and adequate compensation for the loss of its old easement, including the costs to

---

monopoly. In the United States, local governments use franchises to give right-of-way access to companies providing services that require intensive infrastructure, such as electrical and telephone utilities.

Jennifer Amanda Krebs, Notes & Comments, *Fair and Reasonable Compensation Means Just That: How § 253 of the Telecommunications Act Preserves Local Government Authority Over Public Rights-of-Way*, 78 Wash. L. Rev. 901, 906 (2003). See generally *City of Summerville v. Ga. Power Co.*, 205 Ga. 843 (55 SE2d 540) (1949) (in the context of a city, explaining generally the power to grant franchises to public service corporations).

relocate. Id. ("The county cannot substantially impair an easement without paying compensation.").

Although the County acknowledges that, generally, it would bear the costs of relocating the utility poles when, like here, the County is forcing the utility to relocate power poles and lines constructed on pre-existing private property easements, the County argues that in this case the determination of who has to pay for the relocation expenses should be determined under the parties' 1929 one-page Franchise Agreement ("Agreement"). The Agreement provides in pertinent part:

> 3. For the purposes herein set out [Georgia Power] desires for itself, its successors or assigns, the right and privilege to erect from time to time, operate, maintain, renew and extend its electric transmission and distribution lines, on, along, over and across the public roads, highways, streets and alleys of said County, together with transformers, appurtenances, fixtures and appliances necessary or desirable for efficient operation, subject to the following terms and conditions:
>
> (a) Said electric transmission and distribution lines, on, along, over, and across said roads, highways, streets or alleys shall be erected subject to the approval and supervision of the authorities of said County having charge of the laying out, building and maintenance of said roads, highways, streets or alleys.

(b) In event of change in the grade or width of any of the roads, highways, streets or alleys by the County authorities, on, along, over and across which any such transmission or distribution line or lines may have been or may hereafter be erected, Petitioner agrees, at its own cost and expense and without any cost or expense to said County, to move its transmission or distribution lines to such other location on said roads, highways, streets or alleys as may be designated by said County authorities.

(c) [Georgia Power] further agrees to indemnify, protect and save harmless the said County from the payment of any sum or sums of money which may be demanded of said County by any person or persons whomsoever on account of injury to person or damage to property, of any and every nature or character caused or occasioned by, or in any way traceable to the erection, operation, renewal extension and maintenance of said electric transmission and distribution lines so erected, operated, renewed, maintained or extended by Petitioner on, over, along and across such roads, highways, streets or alleys.

. . .

WHEREFORE, [Georgia Power] respectfully requests that said County grant it, its successors or assigns, permission to so erect from time to time, operate, renew, maintain and extend its electric transmission and distribution lines for the transmission, distribution and utilization of electric current and energy with all necessary wires, cables, transformers, fixtures, appliances, appurtenances, poles, frames and other supports, together with its telephone and telegraph lines on, along,

6

over and across the public roads, highways, streets and alleys of said County under the terms and conditions herein set out and stipulated.

The trial court found the Agreement inapplicable here because the electric lines and poles at issue were erected on private property easements prior to the time the County acquired right-of-way rights or built Panola Road and were not erected under the supervision and approval of any County road authority. But the County argues that subsection (b) contains no such limiting language, and on its face applies anytime removal and movement of Georgia Power poles is necessitated by a road widening or other specified change along what is at the time of the removal a County-owned road or highway.

Contract construction is generally a question of law for the court, see OCGA § 13-2-1, and we conduct a de novo review of the trial court's determination. *Unified Govt. of Athens-Clarke County v. Stiles Apartments, Inc.*, 295 Ga. 829, 832 (1) (764 SE2d 403) (2014). The cardinal principle that guides our construction of a contract is to effectuate the intent of the parties as set out in the language of the contract. Id.; OCGA § 13-2-3. "[T]he construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving

7

at the construction of any part." *Shepherd v. Greer, Klosic & Daugherty*, 325 Ga. App. 188, 190 (750 SE2d 463) (2013).

Here, the Agreement explicitly sets out its purpose – to permit Georgia Power "to erect from time to time, operate, maintain, renew and extend" power transmission lines "on, along, over and across the public roads, highways, streets and alleys of said County." Such right or permission is granted subject to the terms and conditions stated in section 3, as set out in subsections (a), (b), and (c). Subsection (a) provides that such lines would be "erected" subject to the "approval and supervision" of the County authority charged with laying out, building and maintenance of said roads, clearly referring back to the public roads of the County mentioned in section 3. Under subsection (b), the specific provision at issue here, Georgia Power agrees to bear the expense of moving "*any such* transmission or distribution line or lines [which] may have been or may hereafter be erected." (Emphasis supplied.) This obligation does not extend to *any* power lines that may have been or may be erected along county roads, but to *"any such"* power lines that may have been or may be erected, appearing to refer back to the power lines in subsection (a) that have been erected with county approval or under county supervision.

8

Accordingly, looking to the structure and language of the Agreement, i.e., by placing subsection (b) in the context of the Agreement as a whole, and properly reading it in relation to the other subsections under section 3, we agree with the trial court that under the plain language of the Agreement, subsection (b) does not apply to those situations where Georgia Power is forced by the County to relocate power transmission lines and poles that it originally erected on private property easements on or along a non-County owned road or highway. As the trial court found, "[t]o interpret the agreement otherwise would be to find that it provides that any easement rights that Georgia Power has anywhere in the county may be taken without compensation if necessary to widen a road or change its grade, regardless of the circumstances surrounding the acquisition of the easement and erection of the equipment." Based on the authority set out above, the trial court properly found that Georgia Power was entitled to compensation for the taking of its private property easements, including the costs of relocating its electrical power and distribution poles.

*Judgment affirmed. Barnes, P. J., and McFadden, P. J., concur.*

9