A92A0550, A92A0551. NODVIN v. PLANTATION PIPE LINE COMPANY; and vice versa.
(420 SE2d 322)

BIRDSONG, Presiding Judge.

Nodvin instituted this suit against Plantation Pipe Line Company and Diversified Energy Services. He seeks damages for fraud and trespass, alleging that defendants engaged in a conspiracy through which they, without legal authority, entered upon his land and constructed a pipeline for the transportation of oil and gas. Defendants claim that this action was authorized by right-of-way easements contained in deeds executed in 1941 and 1968 within Nodvin's chain-of-title. Nodvin claims that these deeds are invalid. The trial court granted summary judgment in favor of Diversified and partial summary judgment in favor of Plantation; discovery motions filed by Nodvin were denied. In Case No. A92A0550, Nodvin appeals. In Case No. A92A0551, Plantation cross-appeals.

*The 1941 Deed*

By deed dated July 14, 1941, E. M. Huffine conveyed the original right-of-way easement to Plantation "for the purpose of constructing, maintaining, operating, altering, repairing, removing, changing the size of, and replacing pipe for the transportation as a common carrier for hire of oil, crude petroleum and refined petroleum products or combinations thereof or similar thereto, natural and artificial gas, casinghead and natural gasoline and any other liquids or gases, the grantee to have the right to select the route, under, upon, over and through the lands situate in said state and county, more particularly described as follows: All of Lot of Land No. 157 . . . except. . . . Also: All of Lot of Land No. 158 . . . with ingress and egress to and from the said right-of-way.

"And also the right to lay, construct, maintain, alter, repair, remove and replace at any time additional lines of pipe adjacent to and parallel with the line above mentioned, upon payment for each additional line so laid, the consideration above named. . . . It is provided that all pipelines constructed under this grant shall be confined to a strip of ground thirty feet in width, the center line of which shall be the center line of the first pipeline hereafter installed by grantee over, upon, through, under or across said lands.

"The grantee, by the acceptance here, agrees to bury the pipelines so that they will not interfere with the cultivation of the land, and also to pay any damage to crops, fences and timber, which may arise from laying, maintaining, operating or removing such pipelines. Said damage, if not mutually agreed upon, to be ascertained and determined by three disinterested persons; one to be appointed by the undersigned, _____ successors, heirs or assigns; one by the grantee, its successors or assigns, and the third by the two persons aforesaid, and the award of such three persons, or any two of them, shall be final and conclusive."

The consideration for this deed was $63.

*The 1968 Deed*

For a consideration of $1,680, H. C. Woods, by deed dated February 7, 1968, conveyed additional easement rights to Plantation across a tract of land lying in Land Lot Nos. 132, 157, and 158 "[a]nd also any other lands owned or claimed by said Grantor adjacent to the lands particularly described above, together with the right of ingress and egress and unimpaired access over and across the above described lands and adjacent lands of the grantor for all purposes incident to said right-of-way and easement . . . herein granted.

"This instrument supplements and amends original easement

and right-of-way grant (or grants) in which grantee was the grantee pertaining to the above described property and which is recorded in the Office of the Clerk of the Superior Court of said County in Georgia, Book 10, at page 202. Such grant (or grants) is hereby amended so that the second paragraph thereof shall read as follows: And also the right to lay, construct, maintain, operate, alter, protect, repair, remove and replace at any time additional line(s) of pipe generally parallel with the line above mentioned, with payment for each additional line to be the consideration above named. It is agreed that all of said pipelines shall be located within a strip of land fifty feet in width. The center line of the thirty foot strip covered by the original grant (or grants) is the grantee's 12/10-inch pipeline and the twenty foot additional strip covered by this instrument lies contiguous to said thirty foot strip on the side thereof on which the first additional pipeline shall hereafter be installed by grantee.

"It is the intention of the grantor to, and grantor does, give, grant, bargain, sell, convey and warrant to grantee the easements, rights and privileges aforesaid under, upon, over and through an additional strip of land twenty feet in width contiguous to the original thirty foot strip so that the thirty foot strip provided for in the original grant (or grants) shall hereafter be one fifty foot strip. The consideration stated herein shall also compensate for the construction of an additional pipeline on said fifty foot strip. The parties agree and confirm that grantee may use such area contiguous to the aforesaid fifty foot strip as may be reasonably necessary in the exercise of its easement rights.

"In addition to the above consideration, grantee agrees to repair or to pay for any actual damage which may be done to crops, fences, and timber directly caused by grantee exercising any rights herein granted; provided, however, after the first pipeline has been installed following the execution of this instrument, grantee shall have the right, without payment of damages, to keep the said fifty foot right-of-way clear of trees, undergrowth, lakes, ponds, buildings, structures and other improvements."

### Additional Facts

Plantation constructed the original 10-inch pipeline in 1941. In 1951, Plantation constructed a 14-inch pipeline within the original 30-foot easement. In 1968, Plantation constructed a 26-inch pipeline in the additional 20-foot strip granted under the 1968 deed from Woods.

In 1969, Woods made a conveyance to Credico, Inc., which in turn made a conveyance to Nodvin in the same year. The conveyance to Nodvin covers property in Land Lot No. 158 over which the easement runs.

In 1987, Plantation embarked on a project to construct a 12-inch pipeline beside its other three pipelines along a 28-mile route from Bremen Station near Bremen, Georgia, to Austell Station near Austell, Georgia.

Plantation contracted for Diversified Energy Services to perform surveying, mapping, and right-of-way services in connection with the construction of the 12-inch pipeline. Employees of Diversified were directed and authorized to pay landowners affected by the construction the amount of money stipulated within Plantation's 1941 easements for the right to lay an additional pipeline across each landowner's property. If a particular landowner no longer owned all of the property within the pipeline easement, then the landowner was paid or tendered a prorated amount based on the "roddage" (a rod being 16-1/2 feet) of pipeline traversing his or her property. Diversified employees were also authorized to pay damages to landowners for any damage to their property located contiguous to Plantation's 50-foot easement strip that was used as temporary work space during construction.

Nodvin was one of the property owners affected by the 12-inch pipeline construction. In May or June of 1987, Diversified personnel offered Nodvin $100 as consideration for construction of the additional line and damage which would be caused in areas outside of the easement. In July of 1987, Diversified personnel tendered Nodvin $44 as the cash payment under the 1941 Huffine deed, as amended by the 1968 Woods deed, for the right to lay the additional pipeline along the portion of the right-of-way on Nodvin's property. Nodvin also had pine trees present in the area of a temporary work space. Diversified later attempted to settle these damages by offering plaintiff a total of $2,000 for cutting the pine trees and for the consideration required under the deeds. Nodvin stated that this was inadequate compensation and refused to accept these sums. During the summer of 1987, Plantation entered upon Nodvin's land and commenced laying the 12-inch pipeline.

Nodvin subsequently instituted this suit. In addition to alleging a conspiracy by defendants to commit fraud and trespass by using invalid easements to enter upon his property, he has asserted that they damaged his property by destroying valuable timber and vegetation, by failing to maintain the property which had been disturbed, thereby allowing erosion to occur, and that property used as a work space, outside the easement but contiguous to it, was not reasonably necessary to Plantation's construction activities.

The trial court rejected Nodvin's arguments that Plantation's pipeline right-of-way easement is invalid and that Diversified and Plantation engaged in a conspiracy to commit fraud and trespass. Accordingly, Diversified's motion for summary judgment was granted,

and Plantation's motion for summary judgment was granted on all issues except those concerning: (1) the amount of pro-rated consideration to be paid to Nodvin for Plantation's exercise of its right to construct the additional 12-inch pipeline; (2) whether the area used by Plantation as a temporary work space contiguous to the 50-foot easement was reasonably necessary; (3) the amount of damages to be awarded to Nodvin for Plantation's cutting of pine trees in the area of the temporary work space.

The trial court also denied motions by Nodvin to compel Plantation to respond to requests for discovery concerning transactions between Plantation and other individuals owning property within Plantation's easement for the 12-inch pipeline from Bremen to Austell. The trial court sustained Plantation's objection on grounds that these transactions were irrelevant. *Held*:

### Case No. A92A0550

1. Nodvin argues that the deed through which Huffine granted the original easement in 1941 was ineffective because Huffine had conveyed the subject property to Margarete Huffine Sewell in 1936. Plantation does not contest the fact that Huffine had in fact conveyed the property to Sewell prior to his grant of the easement to Plantation.

For the following reasons, we hold that this does not invalidate Plantation's easement.

(a) The deed from Credico to Nodvin states that the conveyance included "all of the right-of-way granted by easement to Plantation Pipe Line Company by H. C. Woods and his predecessor in title." "A grantee who accepts a deed to the property granted is estopped to deny the truth of a recital that the grantor had previously granted an easement or interest in the property to another person. [Cits.] The estoppel upon the grantee in such case likewise binds the grantee's privies in estate. [Cit.]" *Toland v. Brewster*, 144 Ga. 236, 239-240 (1) (86 SE 1089).

The holding from *Toland* is an application of OCGA § 24-4-24. Subsection (a) of this Code section states: "Conclusive presumptions of law are termed estoppels; averments to the contrary of such presumptions shall not be allowed. Estoppels are not generally favored." Subsection (b) states: "Estoppels include presumptions in favor of . . . (5) Recitals in deeds, except payment of purchase money, as against a grantor, sui juris, acting in his own right, and his privies in estate, blood, and in law"; see also OCGA § 24-4-24 (b) (4) (creating estoppels as to "[a]ncient deeds and other instruments more than 30 years old, when they come from proper custody and possession has been held in accordance with them").

(b) Moreover, under the evidence in this case, Plantation acquired prescriptive title to the original 30-foot right-of-way by adverse possession for seven years under color of title pursuant to OCGA § 44-5-164.

"An easement may be acquired by prescription in twenty years unless there is some color of title, in which case only seven years is required. [Cits.]" *Smith v. Clay*, 239 Ga. 220, 221 (236 SE2d 346).

"[OCGA § 44-5-161] sets out the following as the essential elements of adverse possession: possession that is public, continuous, exclusive, uninterrupted, peaceable, not originating in fraud and accompanied by a claim of right." *Chancey v. Ga. Power Co.*, 238 Ga. 397, 398 (233 SE2d 365). "A claim of right will be presumed from the assertion of dominion, particularly where the assertion of dominion is made by the erection of valuable improvements [cit.]; possession originating in fraud will not be presumed. [Cit.]" Id.

"In Powell on Actions for Land 340, § 295, color of title is defined as follows: 'Color of title is "a writing upon its face professing to pass title, but which does not do it, either from want of title in the person making it, or from the defective conveyance that is used — a title that is imperfect, but not so obviously so that it would be apparent to one not skilled in the law." ' " *Capers v. Camp*, 244 Ga. 7, 11 (3) (257 SE2d 517).

2. Under our holding in Division 1 (a), supra, whether the deed from Huffine to Plantation was in fact recorded, an issue raised by Nodvin, is immaterial. (Note: It is stated in the Huffine deed that it was recorded at page 22 of Book 10 in the office of the Clerk of the Superior Court of Douglas County. Nodvin has submitted proof that a different instrument is recorded at page 22 of Book 10. Plantation argues that the superior court clerk maintains two sets of books; under *Pease &c. Realty Trust v. Gaines*, 160 Ga. App. 125, 127 (1) (286 SE2d 448), the deed, which was filed for record in the office of the clerk, is constructive notice even if the clerk recorded it in the wrong book; the presumption in favor of ancient deeds bars litigation of this issue; and in his deposition testimony, Nodvin waived the notice issue.)

3. Nodvin's argument that the Huffine deed has not been properly authenticated is without merit. Under the reasoning of *McBrayer v. Walker*, 122 Ga. 245, 248-249 (50 SE 95), Nodvin vouched for the authenticity of this deed by appending it as an exhibit to his complaint. Moreover, he did not raise this issue before the trial court. See generally *Nodvin v. West*, 197 Ga. App. 92, 95 (3 a) (397 SE2d 581).

4. Nodvin argues that the provision in the 1968 deed, granting Plantation the right to lay additional pipelines over "any other lands owned or claimed by said grantor adjacent to the lands particularly described above" is so vague and indefinite as to render the grant of

the easement void.

Nodvin studiously ignores the fact that Plantation was granted the right to lay pipelines within an additional 20-foot strip contiguous to the original 30-foot strip, so that the original 30-foot strip would thereafter be one 50-foot strip.

"If an easement is granted for a pipeline in general terms, the proprietor of the pipeline has no right to take and hold possession of all the land by virtue of the grant. His right of possession is limited to the part of the land required as right of way for such pipeline as is actually laid. . . . Accordingly, that the grant does not describe the route over which the line is to be laid will not nullify the grant. And where the grant of a pipeline easement is general as to the location of the pipe and its size, it becomes fixed and certain after the pipe is laid and is used with the acquiescence of both grantor and grantee." 61 AmJur2d, Pipelines, § 29, p. 598.

"Moreover, the grant of an easement containing an indefinite description will be upheld where its location has been established by consent of the parties. [Cit.]" *Barton v. Gammell*, 143 Ga. App. 291, 296 (3) (238 SE2d 445); see *Livingston v. Livingston*, 210 Ga. 607 (1) (82 SE2d 1) (recognizing that an open-ended property description does not invalidate a conveyance where a key to the location through the aid of extrinsic evidence exists); see also *Jones v. Colle*, 727 SW2d 262; see also Annotation, Construction & Application of "Mother Hubbard" or "Cover-All" Clause in Gas and Oil Lease or Deed, 80 ALR4th 205 (limiting the application of so-called "cover-all" or "Mother Hubbard" clauses in leases or deeds granting mineral rights to oil and gas).

" 'Right-of-way instruments, with substantially the same provisions as the one for consideration by the Court in this instance, have been construed by courts in other jurisdictions. *With one accord*, they have held that such instruments were not vague and indefinite; and that the grantees therein had the right, under such agreements, to lay and construct additional pipelines.' [Cits.]" *Vandiver v. Transcontinental Gas Pipe Line Corp.*, 222 FSupp. 731, 734 (N.D. Ga.).

5. Nodvin's argument that Diversified's employees were guilty of misrepresentation by giving the false impression that they were employees and agents of Plantation is wholly without merit. The record plainly shows that Diversified's employees were authorized representatives of Plantation.

### Case No. A92A0551

6. The trial court did, however, err in denying Plantation's motion for summary judgment on the question of whether the area used by it as temporary work space was reasonably necessary to the con-

struction of the additional pipeline.

Plantation's expert witness testified that the pipelines run in an easterly/westerly direction. Plantation used a 30-foot area parallel and adjacent to the northern boundary of the 50-foot right-of-way as a temporary work space. The pipelines carry hazardous liquids, and extreme caution must be exercised in utilizing mechanized equipment to lay new pipelines near operating lines due to the danger of ignition and release of petroleum if an operating line is struck and ruptured. The pipelines laid in 1941, 1951, and 1968 were buried several feet deep but were shallower where erosion had occurred. As authorized by the 1968 deed, a temporary work space, 30 feet in width, was cleared north of the 50-foot right-of-way on Nodvin's property to provide adequate room for tractors, trucks, and other large vehicles to operate safely without encroaching upon operating lines. This space was also used to lay and fabricate new line above ground that was then lowered into an excavated ditch. Accomplishment of these operations safely and efficiently would have been virtually impossible without the additional temporary work space contiguous to the existing 50-foot easement right-of-way.

In opposition, Nodvin asserted that Plantation had adequate access from Bright Star Road, which runs in a northerly/southerly direction perpendicular to the easement and fronts it over a distance of 50 feet on each side.

As argued by Plantation, this alternative location did not satisfy Plantation's need for a work space parallel to the full length of the easement. Through its proof Plantation established a prima facie entitlement to summary judgment on the question of whether the 30-foot contiguous area it utilized was reasonably necessary to its construction activities, thereby shifting the burden of coming forward with evidence to Nodvin. His rebuttal evidence failed to show that there is a genuine issue of material fact for trial. Accordingly, Plantation was entitled to summary judgment on this issue. *Balke v. Red Roof College Park Co.*, 190 Ga. App. 779, 781 (2) (380 SE2d 61).

Additionally, it is not required that no issue of fact remains to warrant grant of summary judgment, but rather that no genuine issue of material fact remains; and while there may be some shadowy semblance of an issue, the case may nevertheless be decided as a matter of law where the evidence clearly and palpably shows, as in this case, that the jury could reasonably draw but one conclusion. *Peterson v. Liberty Mut. Ins. Co.*, 188 Ga. App. 420, 424 (373 SE2d 515).

7. It follows that Plantation is not chargeable with trespass. As in *Hunton v. Colonial Pipeline Co.*, 134 Ga. App. 801, 804 (1) (216 SE2d 662), it had an express right of entry by deed to enter upon Nodvin's property and construct the additional pipeline. It also had an express right by deed to use the contiguous area as a temporary work space.

See also *Plantation Pipe Line Co. v. Locke*, 290 FSupp. 752, 754 (2, 3) (N.D. Ala.) (holding that such a right may be implied).

8. The determination by Diversified's personnel, that Nodvin was owed $44 consideration under the 1968 and 1941 deeds, was based on the opinion that "the consideration above named," in the paragraph of the 1968 deed which was substituted for the second paragraph in the 1941 deed, makes reference to the $63 consideration in the 1941 deed and not the $1,680 consideration in the 1968 deed. By taking the roddage within the right-of-way described in the 1941 deed, and dividing it by the consideration for the 1941 deed, and then computing the roddage contained within the right-of-way on Nodvin's property, and then multiplying the two figures, Diversified determined that Nodvin was owed $44.

We agree with the trial court that there remains a genuine issue of material fact as to the exact figure owed.

9. However, the offer by Diversified personnel to compensate Nodvin in the cumulative amount of $2,000 for the consideration required under the deeds and the damage to timber is insufficient to establish a fraudulent or otherwise unlawful conspiracy on their part.

" 'A conspiracy upon which a civil action for damages may be founded is a combination between two or more persons either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort. Where it is sought to impose civil liability for a conspiracy, the conspiracy itself furnishes no cause of action. The gist of the action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage. . . .' [Cits.]" *Cook v. Robinson*, 216 Ga. 328-329 (1) (116 SE2d 742).

Nodvin has made no showing in support of his argument that defendants' failure to offer him, and arguably other property owners, adequate compensation for the exercise of Plantation's easement rights constitutes an actionable conspiracy in perpetration of fraud. Computation of the amount of consideration owed under the 1941 and 1968 deeds embraced matters of law, and a representation or opinion as to such does not support a claim of fraud in the absence of a fiduciary relationship. *Roach v. Ga. Farm &c. Ins. Co.*, 173 Ga. App. 229, 231 (325 SE2d 797); accord *Friedman v. State Farm &c. Ins. Co.*, 177 Ga. App. 873 (341 SE2d 275). Calculation of the amount of damages owed Nodvin by reason of damage to his property required an individualized and distinct determination. This being so, this case is governed by the general rule that " 'in controversies between two persons regarding a given subject-matter, evidence as to what occurred between one of them and a third person with reference to a similar, though entirely distinct transaction is irrelevant. (Cits.)' [Cit.]" *Miller Distrib. Co. v. Rollins*, 163 Ga. App. 635, 637 (2) (295 SE2d 187), cit-

ing *Kamensky v. Southern Oxygen &c. Co.*, 127 Ga. App. 343, 344 (193 SE2d 164); see OCGA § 24-2-2. *Deckner-Willingham Lumber Co. v. Turner*, 171 Ga. 240 (155 SE 1) (holding testimony admissible which tended to show one of the parties charged with fraud had, recently before the transaction in question, proposed to the witness that they engage in such a scheme, declaring how he had handled similar previous transactions and how they could do so safely) is distinguishable.

10. Under our holdings in Division 9, supra, the trial court did not err in denying Nodvin's discovery motions.

11. We agree that there remain genuine issues of material fact concerning the amount of property damage done by Plantation. See *Marshall v. Ga. Power Co.*, 134 Ga. App. 479, 480-481 (6, 8) (214 SE2d 728).

Since the evidence shows that these activities were conducted by Plantation through contractors other than Diversified, the trial court's grant of Diversified's motion for summary judgment was correct.

12. Diversified's motion to impose a $500 penalty against Nodvin for frivolous appeal is denied.

*Judgment in Case No. A92A0550 affirmed. Judgment in Case No. A92A0551 affirmed in part and reversed in part. Pope and Andrews, JJ., concur. Beasley, J., is disqualified.*

DECIDED JUNE 5, 1992 —
RECONSIDERATION DENIED JUNE 23, 1992.

*Richard A. Gordon, Micheline A. Besse*, for appellant.
*Marvin P. Nodvin*, pro se.
*Edward T. Floyd, Hurt, Richardson, Garner, Todd & Cadenhead, Edward H. Nicholson, Jr.*, for appellee.