A07A1387. TRUSTREET PROPERTIES, INC. v. BURDICK et al.
(652 SE2d 197)

PHIPPS, Judge.

A landlord sued the guarantors of two commercial leases after the lessees defaulted on the leases by ceasing business operations. Under an identical provision in each lease, the landlord sought damages to the extent that the rent it would have been paid under the leases exceeded the fair market rental value of the properties. Following a nonjury trial, the court entered judgment in favor of the guarantors. Following denial of the landlord's motions to amend the judgment or for a new trial, the landlord appeals. For reasons that follow, we affirm.

Trustreet Properties, Inc., f/k/a U. S. Restaurant Properties Operating, L.P., filed the present complaint against Michael Burdick and David Hazzard as guarantors of two restaurant leases. The leases were executed by UB's Douglasville, Inc. and UB's Snellville, Inc. in February and May 1998, respectively. The leases were for 20-year terms and provided for periodic rent escalations. The rent

---

[11] Supra.
[12] Id. at 109.

due under each lease was based, however, on complex formulas that make it impossible to compute rental amounts from the leases themselves even in combination with other documents in the record. Trustreet terminated the leases in August 1999 after the lessees ceased doing business.

Trustreet later notified the lessees of its invocation of paragraph 17.2 of each lease, entitling the lessor

> to be indemnified for loss of rent by a lump sum payment representing the difference between the amount of rent which would have been paid in accordance with this lease for the terminated lease property for the remainder of the lease term . . . and the aggregate fair market rent of the terminated leased property for the remainder of the lease term, estimated as of the date of the termination, both of which amounts shall be discounted using a discount rate equal to Treasury securities with maturity date approximately equal to the remaining term of the lease.

For the Douglasville and Snellville leases, Trustreet calculated that under paragraph 17.2 it was owed the respective sums of $667,932.53 and $804,886.12. Because neither the lessees nor the guarantors made any payments in response to Trustreet's demand for these sums, Trustreet brought this suit against the guarantors.

To prove damages at the bench trial, Trustreet submitted the testimony of Susan Davis (its Senior Asset Manager), Quentin Ball (a real estate appraiser hired by Trustreet to appraise the Douglasville and Snellville properties for the purpose of determining their fair market rent), and supporting documentation.

At trial, Ball testified that, using a "comparable rentals" approach in appraising the properties, he determined that the Douglasville and Snellville properties had respective fair market rental values of $20 per square foot and $15 per square foot. A copy of his appraisal report was admitted in evidence. According to this report, the Douglasville and Snellville leasehold properties were 6,328 and 6,362 square feet, respectively.

At trial, Davis explained her calculation of damages with reference to a document admitted in evidence as Plaintiff's Exhibit 70. Exhibit 70 consists of an introductory page that shows Davis's calculation of the discounted present values of the total rental payments due for the entire terms of the Douglasville and Snellville leases, the discounted fair market rental values of the properties, and the respective differences in the amounts. Following the introductory page are tables showing each monthly rental payment due on each

lease from termination in 1999 until the end of the lease terms in 2018, as well as the total aggregates discounted to their present values.

Davis testified that the Douglasville and Snellville tenants were making rental payments in respective amounts somewhat higher than $150,000 per year and $130,000 per year. Davis further testified that, performing the calculations in accordance with the directives in paragraph 17.2, she had determined that the discounted present values of the cumulative rental payments for the Douglasville and Snellville leases were $2,054,837.98 and $1,852,905.22, respectively. Davis explained that, based on the appraiser's determination that the Douglasville and Snellville properties had respective fair market rental values of $20 per square foot and $15 per square foot, she had further calculated that the discounted fair market rent for the properties was $1,386,905.45 and $1,048,019.10 respectively. She thus concluded that the discounted present values of the rental payments due under the Douglasville and Snellville leases exceeded the discounted present fair market rental values of the properties in the respective amounts of $667,932.53 and $804,886.12, the amounts for which the guarantors are being sued in this case.

In the judgment appealed, the trial court found that Bell's opinion that the Snellville property had a market value of only $15 per square foot was contradicted by evidence showing that shortly after the breach the property was relet to another entity for $21.25 per square foot. The court found that Bell's opinion that the Douglasville property had a market value of only $20 per square foot was based on a comparison of more distant properties rather than one in the immediate vicinity that he determined to have a market value rent of $23.69 per square foot. For these reasons, the trial court ruled in favor of the guarantors based on its determination that Trustreet had not persuasively demonstrated that the lease rates exceeded the fair market rental value of the subject properties for the relevant time period.

After entry of judgment, Trustreet filed motions as authorized by OCGA § 9-11-52 (c) asking the court to either amend its findings or grant a new trial. Among other things, Trustreet asserted in the motions that even accepting the court's finding that the Douglasville and Snellville properties had respective fair market rental values of $23.69 per square foot and $21.25 per square foot, the discounted present value of the rental payments due under the leases would still exceed the discounted present fair market rental values of the properties in the respective amounts of $412,047.74 and $368,211.71. Attempting to explain how it had arrived at these figures, Trustreet stated that by multiplying the monthly rental rate for each property by 12 to determine an annual rental rate and then by dividing the

annual rental rate by the square footage of the property, it had determined that, from September 1999 until the end of the lease terms, the Douglasville and Snellville leases had average rental rates of $29.08 per square foot and $24.52 per square foot, respectively.

In an order denying Trustreet's post-trial motions, the trial court rejected Trustreet's proffered calculations because the leases did not establish rental amounts based on square footage and because Davis had not used square footage in her calculation of rent due under the leases. The court also questioned Davis's methodology to the extent that she had used escalating rent in her calculation of rent due under the leases and a static per square foot value in determining market value for the remainder of the lease terms. For these reasons, the court refused to revisit its prior judgment and denied Trustreet's motions. For the following reasons, we find no error or abuse of discretion in that decision.

In appeals from nonjury trials, we review the court's resolution of disputed material facts under a clearly erroneous test,[1] which is the same as the any evidence standard.[2] Applying this standard, we accept the trial court's findings as to the fair market rental values of the subject properties on a square footage basis.

We find no error in the trial court's rejection of Trustreet's calculation in its post-trial motions of average square footage rental rates to replace the present monetary values of future rental payments that it had relied on at trial. OCGA § 9-11-52 (c) is not a procedural device by which a party may be granted a second opportunity to prove its case.[3] Here, Trustreet, via OCGA § 9-11-52 (c), attempted to inject into the case a new methodology for calculating damages to replace the one it had used at trial.

It does appear, however, that Trustreet could have provided the court with a more straightforward way to recalculate damages in its post-trial motions by simply increasing the fair market rental monetary values found by Davis (i.e., $1,386,905.45 for the Douglasville property and $1,048,019.10 for the Snellville property) by the percentages by which the trial court had increased the fair market rental square footage values (i.e., 18.45 percent, when the court increased the fair market rental value of the Douglasville property from $20 per square foot to $23.69 per square foot; and 41.67 percent, when it increased the fair market rental value of the Snellville property from $15 per square foot to $21.25 per square foot). And it further appears

---

[1] *Glover v. Ware*, 236 Ga. App. 40, 45 (3) (510 SE2d 895) (1999).

[2] *Ins. Indus. Consultants v. Essex Investments*, 249 Ga. App. 837, 839-840 (1) (549 SE2d 788) (2001).

[3] *Buckley v. Thornwell*, 143 Ga. App. 764-765 (240 SE2d 258) (1977).

that such recalculations would have resulted in a determination of disparities in the present monetary values of future rent payments and the fair market rental values of the properties in the approximate amounts posited by Trustreet in its post-trial motions.

But the court ultimately refused to amend its findings or grant a new trial based on a flaw it found in Trustreet's overall method for calculating damages (i.e., Davis's use of escalating rent in her calculation of the present monetary values of future rent payments in contrast to her determination of fair market rent on a static per square foot basis). For that reason, Trustreet had no legal entitlement to an amended judgment in its favor or the grant of a new trial.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 14, 2007.

*Raley & Sandifer, G. Brian Raley, Catherine F. Munson*, for appellant.

*Greenberg & Traurig, Stephen G. Weizenecker*, for appellees.