A10A1029, A10A1030. PARRIS PROPERTIES, LLC et al.
v. NICHOLS et al. (two cases).
A10A1031. NICHOLS et al. v. PARRIS PROPERTIES, LLC et al.
(700 SE2d 848)

McMURRAY, Senior Appellate Judge.

Kathy and Dennis Nichols own property that is burdened by an underground sewer line easement that benefits the adjacent property owned by Parris Properties, LLC. The Nicholses brought this action against Parris Properties and its principal, Kenneth Parris (collectively, the "Parris Defendants"), to prevent the Parris Defendants from replacing the existing sewer pipe with a larger one. The Parris Defendants answered and counterclaimed for conversion based upon the Nicholses' disposal of certain construction materials owned by Parris Properties.

The case was tried before a jury which found, among other things, that replacement of the existing sewer pipeline with a larger diameter pipe would not constitute a substantial change in the easement, and that the Nicholses were liable for conversion. The trial court subsequently entered its "Final Judgment, Declaratory

Judgment, and Order on Permanent Injunction" that included a provision prohibiting the Parris Defendants from making any permanent changes to the surface of the Nicholses' property in replacing the sewer pipe. The trial court also declined to award costs to the Parris Defendants. The Parris Defendants then filed a motion requesting that the trial court amend the final judgment to remove the provision prohibiting surface alteration and to make additional findings related to the easement, which the trial court denied.

In Case No. A10A1031, the Nicholses contend that the trial court erred by denying their motions for a directed verdict and for judgment notwithstanding the verdict ("j.n.o.v.") pertaining to the scope of the easement and the Parris Defendants' counterclaim for conversion. In Case Nos. A10A1029 and A10A1030, the Parris Defendants contend that the trial court erred by including the provision prohibiting surface alteration in the judgment, and erred by declining to amend the judgment or award them court costs as the prevailing parties.

For the reasons discussed below, we affirm the trial court's denial of the Nicholses' motions for a directed verdict and for j.n.o.v.; reverse the judgment to the extent it prohibits surface alteration; reverse in part the trial court's denial of the Parris Defendants' motion to amend the judgment; vacate the trial court's order declining to award costs to the Parris Defendants; and remand for further action consistent with this opinion.

## Case No. A10A1031

1. The Nicholses contend that the trial court erred in denying their motions for a directed verdict and for j.n.o.v. pertaining to whether enlargement of the sewer pipe fell within the scope of the easement. On appeal from the denial of a motion for a directed verdict or for j.n.o.v., we construe the evidence in the light most favorable to the party opposing the motion, and the standard of review is whether there is any evidence to support the jury's verdict. See *McClung v. Atlanta Real Estate Acquisitions, LLC*, 282 Ga. App. 759, 759-760 (639 SE2d 331) (2006). However, "[t]he construction, interpretation and legal effect of a contract such as an easement is an issue of law," which is subject to de novo review. (Footnote omitted.) *Savannah Jaycees Foundation v. Gottlieb*, 273 Ga. App. 374, 376 (1) (615 SE2d 226) (2005). See *Reynolds Properties v. Bickelmann*, 300 Ga. App. 484, 487 (685 SE2d 450) (2009). Guided by these principles, we turn to the record in the present case.

*The Sewer Line Easement.* At the heart of these companion appeals is an express easement originally executed and recorded in 1952 by C. L. Bradford, as grantor, and William R. Bentley, as

grantee. It is undisputed that the Nicholses are the successors in title to Bradford, and that Parris Properties is the successor in title to Bentley.

The easement provides in relevant part:

> That the said C. L. Bradford does give, grant and convey to William R. Bentley a permanent easement for the construction of a sewer from the property of William R. Bentley to the trunk sewer on Vermont Road. The said sewer is to be constructed along the Southeastern line of the said C. L. Bradford and is to run along the hedge of said Southeastern line of C. L. Bradford one hundred and forty[-]seven and six-tenths (147.6) feet from the property of the said William R. Bentley to Vermont Road.
>
> The said William R. Bentley agrees that he will bear the total cost of the construction of the said sewer and any cost of the maintenance and repair of the same, for which he binds himself, his heirs and assigns, and that the said sewer will be placed beneath the surface of the said property of .C. L. Bradford, and that the said William R. Bentley will fill in and restore the property of the said C. L. Bradford to its present condition and will do no damage to the said property of the said C. L. Bradford.

The property burdened by the sewer line easement has a single family residence on it and is part of a neighborhood listed on the National Register of Historic Homes. The Nicholses acquired the property and currently live in the residence.

The property that benefits from the sewer line easement is adjacent to the Nicholses' property and has three rental homes located on it. The property has dual zoning; the front portion of the property is zoned multifamily, and the rear portion is zoned single family. Parris Properties acquired the property and wishes to develop it by building a number of townhomes.

*Installation of the Sewer Pipeline.* At or about the time the easement was granted in 1952, a sewer pipe was placed in the ground of what is now the Nicholses' property. It was a concrete pipe with an inside diameter of four inches and an outside diameter of six inches. At the time the sewer pipe was placed in the ground, the City of Atlanta did not require that the pipeline have any surface structures installed as part of the line, and so the pipeline could be located wholly beneath the surface of the property.

A four-inch sewer pipe is typical of a service connection for a

single family residence.[1] In contrast, the City of Atlanta generally requires an eight-inch sewer pipe for multifamily residential units, such as townhomes, although in some circumstances a six-inch sewer pipe may be permitted. The City of Atlanta now requires installation of a manhole to provide access to eight-inch sewer pipes and installation of a cleanout to provide access to six-inch sewer pipes. As explained by the Director of Watershed Management for the City of Atlanta, a cleanout is "a place where you can insert what plumbers call a snake into the line, which is a long wire or a cable[ ] . . . that can turn and push and cut things that might plug up the pipe." Manholes and cleanouts run from the pipeline to the surface and are "visible from the ground."

*The Proposed Replacement of the Sewer Pipeline.* In 2005, the Nicholses began a project for the renovation and expansion of their home, and a subcontractor working on the project damaged a segment of the existing four-inch concrete sewer pipe. The Nicholses replaced the segment with PVC pipe of the same size. As required by the City of Atlanta, the Nicholses had a cleanout installed on the surface of their property as part of the repair work.

That same year, Parris Properties hired a structural engineer to devise plans for replacing the entire existing sewer pipeline with either a six-inch or eight-inch PVC pipe in order to accommodate the multifamily residential units that Parris Properties wanted to construct on its property. Pursuant to City of Atlanta requirements, replacement with a six-inch pipe would necessitate the installation of a cleanout with a six-inch diameter on the Nicholses' property; replacement with an eight-inch pipe would necessitate the installation of a manhole on their property.

Parris Properties sought and obtained building permits from the City of Atlanta to replace the existing sewer pipeline with an eight-inch pipe. Before the replacement project began, however, the Nicholses filed the present action against the Parris Defendants to prevent the project from happening.[2]

A jury trial ensued in which the central issue was whether increasing the size of the sewer pipeline to a six-inch or eight-inch pipe would constitute a substantial change in the easement requiring the Nicholses' consent. The Nicholses moved for a directed verdict on the ground that replacement with a larger diameter pipe was beyond the scope of the easement as a matter of law, which the trial court denied. The jury thereafter found that replacement of the sewer

---

[1] Unless otherwise noted, references to the diameter of a pipe are to its inside diameter.

[2] The City of Atlanta also was a named defendant in the original lawsuit, but the trial court granted the City's motion to dismiss. That ruling has not been appealed, and the City is not a party to any of these companion appeals.

pipeline with either a six-inch or eight-inch pipe would not constitute a substantial change. The Nicholses moved for j.n.o.v., which the trial court denied.

(a) The Nicholses contend that they were entitled to judgment as a matter of law because the unambiguous language of the easement does not authorize Parris Properties to replace a functioning sewer pipeline. The Nicholses emphasize that the easement provides for the "construction," "repair," and "maintenance" of the sewer line easement, words they contend do not encompass the "replacement" of the existing sewer pipeline, which they maintain is functioning properly. We are unpersuaded.

In construing the language of an express easement, we apply the rules of contract construction. See *Municipal Elec. Auth. of Ga. v. Gold-Arrow Farms, Inc.*, 276 Ga. App. 862, 866 (1) (625 SE2d 57) (2005). The cardinal rule of contract construction is to ascertain the parties' intent, and "[w]here the contract terms are clear and unambiguous, the court will look to that alone to find the true intent of the parties." (Citations and punctuation omitted.) Id. Absent an ambiguity that cannot be resolved by the rules of construction, the interpretation of contractual terms is a question of law for the court. Id.

Applying these principles to the construction of the easement at issue, we conclude that the easement unambiguously authorizes the removal and replacement of a malfunctioning or worn-out sewer pipeline. The right to remove and replace such a sewer pipe falls within the ambit of "repair" and "maintenance." "The common definition of 'repair' is very broad in scope and includes in its meaning 'to make good' " by replacing a structure in poor condition. (Citation and punctuation omitted.) *Carpet Central v. Johnson*, 222 Ga. App. 26, 27 (1) (473 SE2d 569) (1996) (physical precedent only). See also Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/repair ("repair" means "to restore by replacing a part or putting together what is torn or broken," "to restore to a sound or healthy state," or "to make good" or "remedy"). Furthermore, to "maintain" equipment means to "preserve [it] from failure or decline," see Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/maintain, and a sewer cannot be properly maintained if the pipe cannot be replaced when it no longer functions properly or wears out.

The Parris Defendants presented evidence that the existing sewer pipe, which is over a half century old, is in such a condition. According to a plumbing contractor who had previously worked on the sewer pipe, the existing concrete pipe is becoming increasingly brittle and crushes easily, rendering the entire sewer line in need of replacement with new PVC pipe. A former City of Atlanta sewer

engineer also testified that the existing sewer line, as modified by the repairs made by the Nicholses in 2005, is graded improperly and is virtually guaranteed to create future problems with sewage clogging and backing up in the line. Kenneth Parris further testified that the existing sewer pipe has an issue with "slow draining" in a shower, sink, and tub of one of the rental homes on the property owned by Parris Properties.

Because there was some evidence that the existing sewer pipe is not functioning properly and is worn out, and because the terms of the easement permit replacement of a pipe in that condition, the trial court properly denied the Nicholses' motions for a directed verdict and for j.n.o.v. on the asserted ground.

(b) The Nicholses next contend that they were entitled to judgment as a matter of law because enlarging the dimensions of the sewer pipe would impermissibly expand the scope of the easement. According to the Nicholses, a six-inch or eight-inch pipe would occupy more land than the existing sewer pipeline and thus would constitute a unilateral alteration in the physical boundaries of the easement if installed by Parris Properties. We disagree.

The easement in the present case does not specify the exact dimensions of the land granted for running the sewer pipeline. Hence, under Georgia law the path of the easement was defined and became fixed according to the original construction and placement of the pipeline. See *Sloan v. Sarah Rhodes, LLC*, 274 Ga. 879, 880 (560 SE2d 653) (2002) ("[W]here the parties have established the actual location and dimensions of an easement, that determination is the controlling factor under Georgia law."). Once the path of the easement became fixed, the path could not be unilaterally relocated or widened by either of the parties. See id. at 879-880; *Herren v. Pettengill*, 273 Ga. 122, 123-124 (2) (538 SE2d 735) (2000); *Thomason v. Kern & Co.*, 259 Ga. 119, 120 (376 SE2d 872) (1989); *Martin v. Seaboard Air Line R.*, 139 Ga. 807, 809 (1) (77 SE 1060) (1913); *Jackson Elec. Membership Corp. v. Echols*, 84 Ga. App. 610, 611-612 (66. SE2d 770) (1951). In contrast, a change in "the manner, frequency, and intensity of use" of the easement *within the physical boundaries of the existing easement* is permitted without the consent of the other party, so long as the change is not so substantial as to "cause unreasonable damage to the servient estate or unreasonably interfere with its enjoyment." (Punctuation omitted.) *Municipal Elec. Auth. of Ga.*, 276 Ga. App. at 869 (2), quoting Restatement (Third) of Property: Servitudes § 4.10 cmt. f. See also *Faulkner v. Ga. Power Co.*, 243 Ga. 649, 649-650 (256 SE2d 339) (1979); *Humphries v. Ga. Power Co.*, 224 Ga. 128, 129-130 (3) (160 SE2d 351) (1968); *Kerlin v. Southern Bell Tel. &c. Co.*, 191 Ga. 663, 667-668 (2) (13 SE2d 790) (1941).

Here, there was evidence that the removal of the existing sewer pipe and replacement with either a six-inch or eight-inch PVC pipe would not expand the physical boundaries of the easement. As to a new six-inch PVC pipe, there was testimony at trial that PVC pipe is thinner than concrete pipe, such that the old concrete pipe with a four-inch inner diameter and a new PVC pipe with a six-inch inner diameter would actually have the same *outer* diameter. A new six-inch PVC pipe thus would occupy the equivalent amount of land as the existing pipe.

As to a new eight-inch PVC pipe, it is true that the pipe itself would occupy a greater amount of space than the existing pipe, although not appreciably so. But the physical boundaries of a sewer line easement are not "limited to such space as was actually occupied by [the] specific [pipe]" laid at the inception of the easement. *Kerlin*, 191 Ga. at 667 (2) (utility easement not "limited to such space as was actually occupied by [the] specific poles and wires" originally installed). See also *Humphries*, 224 Ga. at 129-130 (3). Rather, the easement includes the general area occupied by the existing pipeline, that is, the basic trench path within which the existing pipe was placed.[3] See *Reid v. Washington Gas Light Co.*, 194 A2d 636, 639 (Md. 1963) (replacement of existing pipe with larger one along same trench path did not constitute a relocation or alteration of the boundaries of the easement); *Knox v. Pioneer Natural Gas Co.*, 321 SW2d 596, 601 (Tex. Civ. App. 1959); 61 AmJur2d Pipelines § 36 ("Replacement of a small gas line with a larger one, using the same trench, is permitted where the increased capacity of the line results in no decrease in safety to the landowner and no substantial increase in the burden of the servient estate.").[4]

---

[3] Our holding in this case is not inconsistent with *Nodvin v. Plantation Pipe Line Co.*, 204 Ga. App. 606, 612 (4) (420 SE2d 322) (1992), abrogated in part on other grounds, *Yaali, Ltd. v. Barnes & Noble*, 269 Ga. 695, 696 (2) (506 SE2d 116) (1998). In *Nodvin*, we rejected the contention that the pipeline easement was void for being vague and indefinite, noting that the location and size of a pipeline becomes certain once the pipe is placed in the ground and used with the acquiescence of both the grantor and grantee. *Nodvin*, 204 Ga. App. at 612 (4). *Nodvin* addressed the validity of the easement in the first instance, not whether the subsequent replacement of the existing pipeline with a larger one would impermissibly expand the physical boundaries of the easement.

[4] We have similarly held that with respect to overhead transmission lines, the stringing of new wires within the general area marked by the original poles, wires, and appurtenances was a "change in degree only, and not in kind," and thus was "a reasonable and normal incident of the existing [easement] right." *Kerlin*, 191 Ga. at 668 (3). See also *Faulkner*, 243 Ga. at 649-650 (installation of new, higher voltage transmission wire in same easement right-of-way did not exceed the scope of the existing easement); *Humphries*, 224 Ga. at 129-130 (3) (power company authorized to enter right-of-way and replace existing transmission poles and wires with new, larger equipment to accommodate higher voltages); *Municipal Elec. Auth. of Ga.*, 276 Ga. App. at 869 (2) (addition of fiber optic line to existing electronic transmission system of towers and poles was a change in the degree of use rather than the kind of use, and thus fell within the scope of the original utility easement).

The Nicholses do not contend that Parris Properties intends to relocate the trench path in removing and replacing the existing sewer pipeline. Furthermore, Parris Properties' structural engineer testified that the eight-inch sewer pipeline would "go straight within the same alignment of where the existing sewer line was." And the "Sewer Extension Drawings" developed by the structural engineer, which included diagrams of how the existing sewer pipeline would be replaced, also constituted some evidence that the new pipe would be installed along the same basic trench path as the existing pipeline. Accordingly, even though an eight-inch PVC pipe has a slightly larger outer diameter than the existing sewer pipe, there was evidence that the new pipe would "not encroach upon any space which is beyond or without" the same "general area" now being occupied by the sewer line easement, and thus is "permissible as territorially within the easement." *Kerlin*, 191 Ga. at 667-668 (2).

Under these circumstances, there was evidence reflecting that the removal of the existing sewer pipe and replacement with either a six-inch or eight-inch PVC pipe would not expand the physical boundaries of the easement, and so the Nicholses were not entitled to judgment as a matter of law on that issue. Rather, the replacement with the new pipe would constitute a change in the manner, frequency, and intensity of use of the easement, meaning that Parris Properties could unilaterally make the replacement as long as the change would not be so substantial as to cause unreasonable damage to the servient estate or unreasonably interfere with its enjoyment. See *Municipal Elec. Auth. of Ga.*, 276 Ga. App. at 869 (2).

(c) The Nicholses further contend that they were entitled to judgment as a matter of law because the uncontroverted evidence showed that increasing the size of the sewer pipeline would constitute a substantial change in the manner, frequency, and intensity of use of the easement. We do not agree because there was conflicting evidence over whether replacement of the sewer pipeline would constitute a substantial change, creating a jury question on the issue.

While there was testimony from the Director of Watershed Management for the City of Atlanta that a new sewer pipe with a six-inch or eight-inch diameter would increase the amount of wastewater flowing through the sewer pipeline, he also testified that a pipe of larger diameter is much less likely to get clogged than a smaller diameter pipe. There was testimony, moreover, that a new larger pipe would be more durable than the old one because it would be made of PVC rather than concrete. Additionally, Mr. Nichols testified that the sewer pipeline for his home does not tie into the sewer pipeline occupying the easement, and so any clog or problem in the latter pipeline would not affect the operation of his own sewer or risk any damage to his home.

In light of this testimony, there was evidence from which the jury could find that increasing the size of the sewer pipe would not cause unreasonable damage to the Nicholses' property or unreasonably interfere with its enjoyment. See generally *Faulkner*, 243 Ga. at 649-650; *Humphries*, 224 Ga. at 129-130 (3); *Kerlin*, 191 Ga. at 667-668 (2); *Municipal Elec. Auth. of Ga.*, 276 Ga. App. at 869 (2); Restatement (Third) of Property: Servitudes § 4.10 cmt. f. The issue of whether the replacement of the sewer pipe would constitute a substantial change in the easement, therefore, was properly submitted to the jury.

(d) Lastly, the Nicholses contend that they were entitled to judgment as a matter of law because replacement of the existing sewer pipe requires installation of surface structures (a manhole or cleanout) which they contend are not authorized or contemplated by the easement. They point out that the easement states that the sewer pipeline will be placed "beneath the surface" and that the surface of the land will be "restore[d] . . . to its present condition." Consequently, the Nicholses argue that the easement does not permit Parris Properties to make any permanent alterations to the surface of their property as part of the installation of a new pipeline. Again, we disagree.

The evidence at trial reflected that unlike when the easement was first created, the City of Atlanta currently requires installation of a cleanout to provide access to a six-inch sewer pipe and of a manhole to provide access to an eight-inch sewer pipe for repair and maintenance of the pipeline. Indeed, it is undisputed that replacement of the existing four-inch sewer pipe with a pipe of the same inner diameter likewise would require installation of a cleanout. Moreover, even when an old pipeline is not replaced in its entirety, a cleanout must be installed when a portion of the pipe is repaired or replaced near the City of Atlanta's right-of-way.

This evidence shows that Parris Properties cannot exercise its rights under the easement to repair and maintain the sewer pipeline by replacing a malfunctioning or worn-out pipe if it cannot install any surface structures on the Nicholses' property. "The grant of an easement impliedly includes the authority to do those things which are reasonably necessary for the enjoyment of the things granted." *Jakobsen v. Colonial Pipeline Co.*, 260 Ga. 565, 566 (2) (397 SE2d 435) (1990) (pipeline easement included implied right to side-cut timber encroaching upon the right-of-way so that an inspection of the pipeline could be made). See also *Avery v. Colonial Pipeline Co.*, 213 Ga. App. 388, 389-390 (1) (444 SE2d 363) (1994). Moreover, "[w]hen one grants a thing, he is deemed also to grant that within his ownership without which the grant itself will be of no effect." (Citation and punctuation omitted.) *Roberts v. Roberts*, 206 Ga. App.

423, 424 (2) (425 SE2d 414) (1992). See also *Massey v. Britt*, 224 Ga. 762 (164 SE2d 721) (1968). Grantees of an easement also have an implied right in the easement to take the action required of them to comply with government rules and regulations. See *Avery*, 213 Ga. App. at 390 (1) (pipeline easement included implied right to remove trees and vegetation from the right-of-way in order to comply with federal safety regulations). In light of these principles, Parris Properties has an implied right under the easement to place surface structures on the Nicholses' property where, as here, the inability to do so would frustrate its express rights granted in the easement to repair and maintain the sewer pipeline.

For the combined reasons set forth in subdivisions (a)-(d), the trial court properly denied the Nicholses' motions for a directed verdict and for j.n.o.v. regarding whether enlargement of the existing sewer pipe fell within the scope of the easement. Parris Properties is authorized to remove the existing sewer pipeline and replace it with a six-inch or eight-inch PVC pipe along the same basic trench path, and to install a manhole or cleanouts on the surface of the Nicholses' property to the extent required by the City of Atlanta.

2. The Nicholses also contend that the trial court erred in denying their motions for a directed verdict and for j.n.o.v. on the Parris Defendants' counterclaim for conversion predicated on the Nicholses' disposal of pipe fixtures owned by Parris Properties. According to the Nicholses, they never attempted to assert dominion over the pipe fixtures and never interfered with Parris Properties' ability to remove the materials.[5] In addition, the Nicholses maintain that they were entitled to remove the pipe fixtures because Parris Properties had no right to deposit the fixtures on their property in the first instance. Finally, the Nicholses assert that the jury's verdicts on their claim for nuisance and the Parris Defendants' counterclaim for conversion were inconsistent.

Construed in favor of the jury's verdict, the relevant facts pertaining to the conversion counterclaim are as follows. This case was originally filed by the Nicholses in the Superior Court of Fulton County but was transferred to the Superior Court of Clarke County. In an order entered on March 10, 2006, the Superior Court of Fulton

---

[5] The Nicholses further argue that they were entitled to judgment as a matter of law because they disclaimed title and tendered the pipe fixtures to Parris Properties so as to discharge and release them from a conversion claim under OCGA § 44-12-153. While the Nicholses raised this argument in their motion for j.n.o.v., they did not raise it in their motion for a directed verdict. "[G]rounds raised in a motion for judgment notwithstanding the verdict that were not raised in the motion for directed verdict will not be considered on appeal." (Citation omitted.) *Southern Land Title, Inc. v. North Ga. Title*, 270 Ga. App. 4, 7 (2) (606 SE2d 43) (2004). See also *Fertility Technology Resources v. Lifetek Med., Inc.*, 282 Ga. App. 148, 153 (2) (637 SE2d 844) (2006).

County recited that Parris Properties had agreed "to refrain from any construction" until the transfer had been completed and the case had been assigned to a new judge.

On or about April 28, 2006, before the transfer of the case had been effectuated, Parris Properties deposited construction equipment and materials, including pipe fixtures for constructing a manhole, on the Nicholses' property. Thereafter, on May 4, 2006, in the order formally transferring the case to the Superior Court of Clarke County, the Superior Court of Fulton County directed all parties "to refrain from commencing to build, construct, or renovate anything on the property that is subject to the alleged easement."

On May 9, 2006, following the transfer and reassignment of the case, the Superior Court of Clarke County entered a temporary restraining order ("TRO") providing that the construction equipment and materials were to be removed from the Nicholses' property by Parris Properties, but did not specify a time frame within which the items had to be removed. Some of the items were removed from the property by Parris Properties, but not the pipe fixtures, which were the subject of negotiations between the parties concerning the time frame for removal. Subsequently, on June 6, 2006, after receiving proposed orders for interlocutory relief from both parties, the trial court entered its order on interlocutory injunction in which the Parris Defendants were "ordered to remove any equipment or materials placed on the Nichol[ses'] property within ten days of the date of this order, if not already removed."

It later became clear, however, that in the interim between entry of the TRO and the order on interlocutory injunction, the Nicholses had made the unilateral decision to have a contractor remove the pipe fixtures from their property and dump them at a landfill. According to Mr. Parris, the pipe fixtures were worth over $4,000.

In the ensuing litigation, the Nicholses sought damages for nuisance based upon the depositing of the construction equipment and materials on their property, and the Parris Defendants sought damages for conversion based upon the Nicholses' removal and disposal of the pipe fixtures. The jury found in favor of the Nicholses on their nuisance claim and in favor of the Parris Defendants on their conversion counterclaim.

We conclude that the evidence adduced at trial was sufficient to support the Parris Defendants' counterclaim for conversion against the Nicholses.

> [C]onversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsis-

tent with his rights; or an unauthorized appropriation. Thus, any distinct act of dominion and control wrongfully asserted over another's personal property, in denial of his right or inconsistent with his right, is a conversion of such property.

(Citations, punctuation and footnotes omitted.) *Williams v. Nat. Auto Sales*, 287 Ga. App. 283, 285 (1) (651 SE2d 194) (2007). See OCGA § 51-10-1. The unauthorized removal and disposal of personal property can constitute conversion. See *Washington v. Harrison*, 299 Ga. App. 335, 339 (1) (682 SE2d 679) (2009) (unauthorized removal of personal property from land by salvage crew at behest of landlord "with no consideration given as to its ultimate fate," and in violation of dispossessory statute, constituted conversion); *Thakkar v. St. Ives Country Club*, 250 Ga. App. 893, 896 (5) (553 SE2d 181) (2001) (conversion could be found based upon unauthorized removal of trees from land and placement in "trash heap"). Furthermore, the exercise of dominion and control over property in violation of a court order or judgment constitutes conversion. See *Blevins v. Brown*, 267 Ga. App. 665, 668 (2) (600 SE2d 739) (2004) (former husband's exercise of dominion and control over truck that had been awarded to former wife in divorce action constituted conversion).

The Nicholses exercised dominion and control over the pipe fixtures by having them removed from their property and disposed of at the landfill. And while a landowner may have the common law right to remove the personal property of others left on his land without his consent, the landowner still must use due care in removing the property. See *Reinertsen v. Porter*, 242 Ga. 624, 628 (1) (250 SE2d 475) (1978); *Grier v. Ward*, 23 Ga. 145 (1857). Here, even if Parris Properties acted wrongfully by depositing and storing the pipe fixtures on the Nicholses' property,[6] there was evidence that the Nicholses failed to exercise due care in removing the expensive fixtures by having them dumped at a landfill "with no consideration given as to [their] ultimate fate." *Washington*, 299 Ga. App. at 339 (1). Furthermore, this case is unique because the method for the removal of the pipe fixtures from the Nicholses' property was designated by court order: Parris Properties was to remove the fixtures under the terms of the TRO. Nevertheless, the Nicholses chose to exercise self-help and remove and dispose of the pipe

---

[6] We need not resolve where or to what extent Parris Properties was entitled to deposit and store the construction equipment and materials on the Nicholses' property as part of its right to repair and maintain the sewer pipeline. Nor must we resolve whether Parris Properties violated the March 10, 2006 order by depositing and storing the items on the property.

fixtures themselves when Parris Properties did not remove the fixtures as quickly as the Nicholses desired, and while the issue of the time frame for removal was still pending before the trial court for resolution. Under these circumstances, the jury was entitled to find that the Nicholses converted the pipe fixtures through their unauthorized removal and destruction of the fixtures in violation of a court order. See, e.g., *Washington*, 299 Ga. App. at 339 (1); *Blevins*, 267 Ga. App. at 668 (2); *Thakkar*, 250 Ga. App. at 896 (5).

Nor was the jury's verdict on the conversion counterclaim inconsistent with the verdict in favor of the Nicholses on their nuisance claim. As previously noted, there was construction equipment and materials deposited on the Nicholses' property other than the pipe fixtures, and those other items were not removed and dumped at the landfill. The jury could have predicated its verdict on the nuisance claim on those other items and its verdict on the conversion counterclaim on the pipe fixtures, and, therefore, the verdicts on the two claims were not inconsistent.[7]

### Case Nos. A10A1029 and A10A1030

3. The Parris Defendants contend that the trial court erred by including a provision in the judgment that prohibited them from making any permanent alterations to the surface of the Nicholses' property as part of the installation of a new sewer pipe. The Parris Defendants further contend that the trial court erred by denying their motion to amend the judgment to allow for the installation of surface structures, such as a manhole or cleanouts, on the Nicholses' property. We agree. For the reasons discussed supra in Division 1 (d), the Parris Defendants are entitled to alter the surface of the Nicholses' property by installing a manhole or cleanouts to the extent required by the City of Atlanta. Accordingly, the trial court's judgment is reversed to the extent it prohibits surface alteration, and the case is remanded for reentry of a judgment consistent with this opinion.

4. The Parris Defendants contend that the trial court erred in declining to amend the judgment to include the additional finding that the Nicholses could not make any permanent changes to the surface of the easement until installation of the new sewer pipe.[8] In moving to amend the judgment pursuant to OCGA § 9-11-52 (c), the

---

[7] The Parris Defendants do not challenge the jury's verdict on the Nicholses' nuisance claim.

[8] The Parris Defendants also enumerate as error the trial court's denial of their motion to amend the judgment to include an additional finding that the City of Atlanta is authorized to issue new building permits for the replacement of the existing sewer pipeline. However, they provide no legal argument or citation to authority in support of this enumeration, as required

YALE LAW LIBRARY

Parris Defendants claimed that the Nicholses planned to construct a new concrete driveway and a retaining wall over portions of the sewer line easement as part of the renovation and remodeling of their home, and that these changes to the surface of the easement would materially interfere with the installation of the new sewer pipe. They requested that the Nicholses not be permitted to proceed with any such construction "for six months from the date of a ruling on this [m]otion to [a]mend, or six months from the date an appellate court rules on this case, if an appeal is filed."

The issue of the Nicholses' planned construction and any potential claims related thereto were not included in the pre-trial order as matters for determination, and the Parris Defendants had not previously requested any declaratory or injunctive relief pertaining to this issue prior to the entry of judgment. A motion for the trial court to amend the judgment to make additional findings under OCGA § 9-11-52 (c) is not a procedural device for injecting new issues into the case. See *Trustreet Properties v. Burdick*, 287 Ga. App. 565, 568 (652 SE2d 197) (2007) (motion to amend judgment properly denied where party sought to inject into the case a new methodology for calculation of damages to replace the one used at trial). Moreover, a party cannot request and obtain relief where the propriety of that relief was never litigated and the opposing party was never given an opportunity to assert defenses to the relief. See OCGA § 9-11-54 (c) (1); *Church v. Darch*, 268 Ga. 237, 238 (2) (486 SE2d 344) (1997). The trial court thus did not err in declining to amend the judgment in the manner requested by the Parris Defendants.

5. Lastly, the Parris Defendants contend that the trial court erred in failing to award court costs to them as the prevailing parties. Under OCGA § 9-11-54 (d), "costs shall be allowed as a matter of course to the prevailing party unless the court otherwise directs." The trial court is afforded discretion in assessing costs because "[s]ometimes it is not so clear who the prevailing party is, as one party may win on some issues and claims and the other on other issues and claims." (Citation and punctuation omitted.) *Dacosta v. Allstate Ins. Co.*, 199 Ga. App. 292, 294 (2) (404 SE2d 627) (1991).

In the present case, the jury found in favor of the Nicholses on their claim for nuisance, but not on their additional claims for trespass and punitive damages. The jury found in favor of the Parris Defendants on the issue of whether replacement with a six-inch or eight-inch pipe would constitute a substantial change and on their

by Court of Appeals Rule 25 (a) (3). The enumeration of error, therefore, is deemed abandoned. See Court of Appeals Rule 25 (c) (2).

counterclaim for conversion, but not on their additional counter-claims for trespass and punitive damages.

As discussed supra in Division 3, the trial court erred by including a provision in the judgment prohibiting the Parris Defendants from making any permanent alterations to the surface of the Nicholses' property as part of the installation of a new sewer pipe. The trial court's erroneous ruling on that issue may have affected its assessment of whether the Parris Defendants should be treated as the prevailing parties. Consequently, without expressing any opinion on the issue, we vacate the trial court's order declining to award costs and remand for reconsideration in light of this opinion.

*Judgment affirmed in part, reversed in part, and vacated in part, and case remanded with direction in Case Nos. A10A1029 and A10A1030. Judgment affirmed in Case No. A10A1031. Barnes, P. J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED AUGUST 30, 2010 — ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Kenneth B. Hodges III, Simon Weinstein, Ken Parris*, for appellants.
*Gibson, Deal, Fletcher & Dunham, James B. Deal, Michael R. Dunham*, for appellees.

